[Sac. No. 1656.    In Bank.—November 23, 1909.]

## SWAMP LAND RECLAMATION DISTRICT NO. 341, Respondent, v. CAROLINE R. BLUMENBERG et al., Appellants.

RECLAMATION DISTRICT—VALIDITY OF ASSESSMENT—DEFENSES IN SUIT TO FORECLOSE LIEN.—If the validity of an assessment levied by a reclamation district has not been established in an action as provided in section 3493½ of the Political Code, all questions involving the regularity of the assessment proceedings, the amount of the charge as compared to the benefits conferred, and the fact that the cost was apportioned in proportion to the benefits, is open to investigation in defense to a suit to foreclose the assessment lien.

ID.—WILLFUL REFUSAL OF DISTRICT TO DO WORK FOR WHICH ASSESSMENT WAS LEVIED.—Where the landowners within a reclamation district are not barred by a judgment validating the assessment, as provided in section 3493½ of the Political Code, the willful refusal of the district to do the work for which the assessment was levied, without just cause or excuse, the effect of such failure being that the work never can be done and that the property-owners never can receive the benefit of that work for which their money was required of them, constitutes a good defense to an action by the district to foreclose the lien of the assessment.

APPEAL from a judgment of the Superior Court of Sacramento County.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

Hinkson & Elliott, for Appellants.

J. Frank Brown, for Respondent.

SHAW, J.—The plaintiff moved in the court below for judgment in its favor upon the pleadings.   The motion was granted and judgment was rendered accordingly.   This is an appeal from that judgment.   The action was begun under the provisions of section 3466 of the Political Code, to foreclose the lien of a swamp land assessment.   It is admitted that the assessment was in all respects regularly made and that it was levied for work to be thereafter performed by the district. The only question presented is whether or not the facts set up

in the answer constitute a defense to the enforcement of the assessment.

The law relating to districts for the reclamation of swamp lands is found in sections 3446 to 3493½, inclusive, of the Political Code.  It is provided that, after the original works of reclamation are completed, if they are of such a nature that other work must be done continuously, or from year to year, to maintain them or to make them effective, other assessments may be made upon the lands of the district, from time to time, to obtain funds for that purpose.  (Sec. 3459.)   The trustees must for that purpose make a statement of the work to be·done and of its estimated cost.  The cost is to be assessed to the lands in proportion to the benefits which it is believed will be caused by the work.  The list of assessments is to be filed with the treasurer of the county (sec. 3462), the several amounts assessed become liens upon the respective tracts of land upon which they are assessed (sec. 3463), payment thereof may be made at any time within thirty days (sec. 3465), and if not so paid they become delinquent and may be called for in installments by the board of trustees, and if any installment is not paid in twenty days after such call, a suit for the foreclosure of the lien to that amount, or to the whole amount of the assessment if the ·trustees so elect, may then be 'instituted by the district (sec. 3466).

The plaintiff district was organized on June 17, 1879, and ever since has been a legally organized reclamation district under the law.  It does not appear when its reclamation works were originally constructed, nor definitely of what they consist, but from the admitted facts it is a necessary inference that they have long been in operation and that the plan of reclamation is that pumps are to be operated during the cropping season of each year to lift the water collected by its ditches over the levee into the river, in order that it may be carried away and the land kept free so that it may be cultivated.  The assessment in question here was made in the year 1907, sometime prior to June 27, and on that date the assessment-list was filed with the county treasurer.  The object of the assessment was to raise funds to operate the pumps referred to, during the two years next ensuing after the levy of the assessment.  Here again the allegations of the pleadings are somewhat uncertain, but we think it is to

be presumed that these two years embraced the cropping
seasons of 1907 and 1908. The amount assessed against the
land of the defendant Caroline R. Blumenberg was $6053.15.
The other defendant is her husband and he has no other inter-
est. Three installments of this assessment were called by
the board of trustees: one on August 23, 1907, for fifteen per
cent thereof, one on September 19, 1907, for ten per cent,
and one on November 19, 1907, for ten per cent, amounting
in all to $2,118.60. The suit is for these installments. It
was begun on January 10, 1908.

In defense it is alleged that, since the levy of the assess-
ment and "during the cropping season of 1907, said plaintiff,
in violation of its duty in that behalf, failed, neglected, and
refused to operate its pump aforesaid, and in consequence
thereof the water from surrounding lands drained down upon
the said land of defendant, Caroline R. Blumenberg, and
submerged and overflowed a large area of the same, and so
thoroughly saturated about 120 acres" thereof; that the crops
growing thereon were destroyed "and said lands rendered
unfit for cultivation ever since"; that defendant "repeatedly
called the attention of said plaintiff to the submerged and
saturated condition of the said lands and demanded of the
plaintiff again and again that it operate its said pump for
the purpose of pumping and removing said water from the
said lands, but plaintiff at all times neglected and refused to
operate its said pump, and wrongfully dammed up the ditches
leading to said pump"; whereby the crops of defendant were
overflowed and destroyed; all to her damage in the sum of
five thousand dollars. It is further alleged that by reason
of these misfeasances of the plaintiff she has not and will
not derive any benefit whatever from the portion of the
assessment sought to be recovered.

Another action for the remaining sixty-five per cent of the
assessment was begun afterward and it is now before this
court on appeal from a similar judgment, being the case desig-
nated as No. 1727 on the Sacramento calendar. In that case
it was alleged that a judgment in pursuance of section 3493½
of the Political Code, declaring the assessment valid, was
rendered in the superior court of Sacramento County on
October 11, 1907, and that it had become final when that
action was begun. This proceeding and judgment are not

mentioned in the pleadings or record in this action, and we cannot now consider what would be the effect of that judgment upon the defense here interposed.

The theory of the defense is that, as the assessment was made to pay the expense of pumping for the seasons of 1907 and 1908, and as the basis of the right and power to make such assessments is the benefit which it is estimated the property will receive from the work for which the assessment is raised, such benefit is the sole consideration for the money to be paid by the property-owner, that the failure to do the work constitutes a failure of consideration, and that when such failure occurs before payment is made, or before judgment in a suit to foreclose the assessment lien, and when because the time for doing the work has passed it never can be done, the failure of consideration is total, and that it may be set up as a defense to such foreclosure.

Under the rule established in *Lower Kings River Reclamation District* v. *Phillips,* 108 Cal. 306, [39 Pac. 630, 41 Pac. 335], if the validity of the assessment has not been established in an action as provided in section 3493½ of the Political Code, all questions involving the regularity of the assessment proceedings, the amount of the charge as compared to the benefits conferred and the fact that the cost was apportioned in proportion to the benefits must remain open to investigation in defense to a suit to foreclose the assessment lien. But here no attack is made upon the regularity of the assessment, nor is there any dispute that the work to be done would have benefited the land to the amount assessed, or that the cost was properly apportioned. The regularity and original validity and binding force of the assessment is admitted by the defendant. The contention is that it has become unenforceable because, by reason of subsequent events, the landowners cannot receive the benefit to secure which, alone, the assessment was made, and upon which, alone, it can be constitutionally founded.

There are authorities which give countenance to the doctrine that such an assessment, although absolutely regular and valid when imposed, may be rendered unenforceable by subsequent events of this nature. In *Davidson* v. *New Orleans,* 34 La. Ann. 171, an assessment for drainage purposes had been declared valid by the supreme court of the state

and by the United States supreme court. Subsequently the work for which the assessment was levied was abandoned, and it was said to be probable that it never would be done. A suit was begun to declare it unenforceable. This action was sustained, the court saying: "Where the consideration of a judgment is prospective and has failed, the eventual debtor is, both in law and in equity, entitled to relief and the consequent exoneration." The force of the decision is weakened by the fact that the authorities cited and quoted in support of this statement go no farther than to declare that a personal judgment cannot be rendered against the property-owner in an action upon such an assessment and that payment can be enforced only against the property benefited and assessed. In Illinois, the local improvement law provides for an assessment to be collected in advance of the doing of the work and for its validation in an action for that purpose in which the property-owners are to be summoned to make such objections as they may have to its validity. The courts of that state hold that, even after such judgment, if the local authorities in charge of the performance of the work allow it to be done in a substantially different manner from that proposed in the ordinance initiating the proceeding, and accept an improvement different in plan and character and substantially less beneficial than the one proposed, such unauthorized action, if it occurs after the validating judgment is rendered, will vitiate the assessment and may be pleaded in defense to a suit to foreclose the lien of the assessment. (*Church* v. *People,* 174 Ill. 366, [51 N. E. 747] ; *Pells* v. *People,* 159 Ill. 587, [42 N. E. 784] ; *Young* v. *People,* 196 Ill. 603, [63 N. E. 1075] ; *Gage* v. *People,* 193 Ill. 316, [61 N. E. 1045].) These doctrines are approved in 2 Cooley on Taxation, 3d ed., p. 1280, 2d ed., p. 672. In equity, also, a doctrine is established to the effect that, under some circumstances, the enforcement of a judgment may be enjoined if it was rendered upon a contract, the consideration of which is an obligation to do something in the future, and subsequent events demonstrated that the thing could not be done, the complaining party being without fault and showing due diligence, as where a judgment against a surety was enjoined because, in another action, it had been subsequently adjudged that the consideration of the contract was illegal and for that reason

the principal was thereby discharged from liability. (*Miller* v. *Gaskins Sm. & M. Ch.* (Miss.), 524. See, also, *Scott* v. *Shreeve*, 12 Wheat. (25 U. S.) 605; *Reese* v. *Walton*, 4 B. Mon. (43 Ky.) 507; *Buchanan* v. *Lorman*, 3 Gill (28 Md.), 51; *Hilleary* v. *Crow*, 1 Harris & J. (5 Md.) 542.)

It is apparent that if a rule of this kind is to be applied to assessments such as that here involved—assessments by a going reclamation district with its permanent works constructed and paid for, assessments levied for the annual operations of the district necessary to be carried on to make the plan of reclamation and the organization of the district of any avail,—operations of no benefit whatever unless the work is done at the proper season,—there may arise insuperable obstacles to the success of such districts and the realization of the benefits to the landowners thereof and to the commonwealth, which such agencies are designed to bring about, may be prevented by the action of a few of the persons intended to be benefited. If the district must have the money to pay in advance to get the work done, and the assessment cannot be collected until the work is done, the district would as well cease to exist at once. The statute makes the assessment payable within thirty days and delinquent thereafter. It manifestly contemplates the payment of the assessment before such annual work, or any substantial part thereof, has been done. A levy for such purposes, by a district which has completed its permanent system of ditches, a district which, though not a municipal corporation, is at least a public corporation performing some of the functions of government for the local territory interested, bears a close resemblance to ordinary taxes levied to defray the expenses of a city or county. It is clear from these considerations that a rule such as that here contended for, if applied at all to such districts and to assessments for such annual work, must be carefully guarded and limited so that it will not operate to defeat the very purpose for which such organizations are created.

There is no explanation in the record of the acts of the district averred in the answer as a defense. The plaintiff has followed the somewhat hazardous course of allowing its case to be stated by its adversary. We are disposed to rest our decision upon narrow grounds. The answer, in effect, avers

that the district, whose duty it was to do the work contemplated, purposely and willfully refused to do it, and that without any excuse for the nonfeasance. It may be that good cause for the failure existed; as that it was caused by lack of funds arising from the failure of the defendant and others to pay the assessments, or by reason of some disaster intervening rendering it impossible, or it may be that the purposes of the assessment are not truly or fully stated in the answer and that the amount raised was expended for some of the other purposes. The plaintiff has submitted its case without asserting any such excuses or inaccuracies, depending solely on the contention that the assessment is valid and conclusive. It is unnecessary to say what would be the effect if such facts were shown. We can only decide the case as it is presented. We are of the opinion that the willful refusal of the district to do the work for which the assessment was levied, without just cause or excuse, the effect of such failure being that the work never can be done and that the property-owners never can receive the benefit of that work for which their money was required of them, constitutes a good defense to an action by the district to foreclose the lien of the assessment, where the landowners are not barred by a judgment validating the assessment as provided in section 3493½ of the Political Code. We do not perceive wherein this rule would operate unjustly to the district or that it would necessarily hamper or restrict it in the performance of its lawful functions. It is in accordance with the principle of the authorities above referred to, and it seems necessary in order to secure justice to the landowners and to prevent their property from being taken for public use without compensation.

It may be suggested that if the money due on the assessment is paid and the work is not done, or by reason of the lapse of time the precise work contemplated by this particular levy cannot be done, the money will remain in the treasury of the district and can be devoted to future annual work of the same character, and that in this manner the landowners will receive the full benefit of the money paid on the assessment, although not the exact benefit intended. Perhaps this might be a good answer to a failure to do the work if it were prevented in some manner other than the willful and

unjustifiable refusal of the district to do it.  But where the failure is thus brought about, we do not think the district should be permitted to collect the assessment for a purpose thus frustrated, and that if money is needed for future work, the district, in such circumstances, should be left to raise it by means of a new assessment.

The judgment is reversed.

Henshaw, J., Melvin, J., Lorigan, J., and Beatty, C. J., concurred.