[Civ. No. 1151. Third Appellate District.—December 16, 1913.]

## J. D. PAYNE et al., Appellants, v. W. W. WARD et al., Respondents.

DRAINAGE ACT—ADJUSTMENT OF ASSESSMENT BY BOARD OF EQUALIZATION—REVIEW BY COURTS.—Under the Drainage Act (Stats. 1885, p. 204; 1891, p. 262; 1909, p. 25) the action of the board of equalization in adjusting an assessment is not conclusive upon the landowners, but is subject to review by the courts.

ID.—DRAINAGE ASSESSMENTS—MANNER OF LITIGATING VALIDITY—ACTION TO RESTRAIN FORECLOSURE.—The litigation of the validity of the assessment may be had in an action brought by the property owners themselves to nullify the action of the board of equalization and to restrain the trustees from bringing suits to foreclose the liens of the assessment.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Goodfellow, Eells & Orrick, and Drew & Drew, for Appellants.

L. L. Cory, M. K. Harris, and L. B. Hayhurst, for Respondents.

BURNETT, J.—In an action brought to restrain them as trustees of the "Ward Drainage District" from bringing suits to collect from plaintiffs certain alleged illegal assess-

ments, the judgment was in favor of defendants from which
the appeal has been taken. It is not disputed that said dis-
trict was regularly established in accordance with and by
virtue of the provisions of an act of the legislature to pro-
mote drainage, approved March 18, 1885 (Stats. 1885, p. 204).
as amended in 1891 (Stats. 1891, p. 262), and also in 1909
(Stats 1909, p. 25), whereby a legislative scheme was pro-
vided for the drainage of other than swamp and overflowed
lands. For a discussion of various legal phases of this legis-
lation and a comparison of it with the Reclamation Act of
1868, we may refer to the opinion of the supreme court in
the case of *Laguna Drainage District* v. *Charles Martin Co.*,
144 Cal. 209, [77 Pac. 933], and wherein its validity is up-
held but therein no consideration was devoted to the main
question involved herein, which is, Was evidence admissible
to prove ''that the assessment of the commissioners was dis-
proportionate to the expense of the works and the benefits
to be derived therefrom?''

Section 13 of said Drainage Act, after providing for the
preparation of a list of the charges assessed by the commis-
sioners against each tract of land and designating specifically
what such list must contain, proceeds to direct that ''The
board of commissioners must, on the completion of such list,
cause a notice to be published in some paper published in the
county where such district is situated, and also have such
notice posted in three places in such district, to the effect
that the board of commissioners will, in ten days from the
publication of such notice, meet (and they shall also name
the time and place of such meeting) as a board of equaliza-
tion for the purpose of equalizing assessments, and will con-
tinue in session as long as may be necessary, not to exceed
ten days, at the end of which time, having equalized and
adjusted such assessments, the list must then be filed as herein
provided.'' Then follows section 14, which, to the extent of
this controversy, is as follows: ''The board of trustees of the
district must commence actions for the collection of such
delinquent installments, and delinquent assessments, with
interest thereon, and costs, and for the enforcement of the
lien thereof on the land assessed, in the superior court of the
county in which the lands, or some portion of it, is situated,
in which action all persons claiming any interest in said land

upon which said assessment is levied, and any person neces-
sary to a complete determination of the action, may be joined
as defendants in said action. . . . In any action to enforce
said lien or to determine the validity of the same, said list,
duly executed by said commissioners, or a certified copy
thereof, shall be *prima facie* evidence of the matters therein
contained, and that said commissioners were duly appointed
and qualified, as required by law, and that they did view and
assess upon the lands set forth in said list the charges therein
contained and that said charges are in proportion to the
whole expense and the benefits which will result from the
work of drainage for which said assessment was so levied.''

As to the charges imposed upon the land, it could not be
made more apparent than it is by the language of the statute
that the following steps are contemplated: The commissioners
appointed by the board of supervisors ''must view and assess
upon the lands situated in the district a charge proportionate
to the whole expense, and to the benefit which will result from
such work'' and must make a list of the charges assessed
against each tract of land. It is not contended that this
assessment is final and that the landowners are bound by it.
The next step in the procedure is the equalization of the
assessments, after due notice given, by the commissioners
sitting as a board of equalization. The list of assessments
as thus corrected by the board of equalization must be then
filed with the county treasurer and the charges thereupon
become a lien upon the property.

It seems to be the contention of respondents that the ac-
tion of the board of equalization in adjusting the assessments
is not subject to review and is conclusive upon the land-
owners. If so, it should certainly appear expressly or by
implication in the statute itself. We find therein, however,
no hint of such intention.

In *Lower Kings River Reclamation Dist.* v. *Phillips*, 108
Cal. 306, [39 Pac. 630, 41 Pac. 335], it is stated: ''Counsel
have cited a great many cases in which it has been held that
the valuation made upon land by the assessor cannot be called
in question in actions to collect the tax unless the right to do
so is provided by law. We are not called upon to dispute
that proposition here. If an assessment has been made as
the law provides, and that law does not violate the inhibition

alluded to'' (denial of due process of law), ''the tax has become a final charge—if the law so provides—and cannot be called in question because the valuations were erroneous.''

The position of respondents as to the finality of the action of the board of equalization is also entirely inconsistent with the provision of the law as to the enforcement and collection of the assessments. By the legislation of the country two methods are provided for the collection of the various taxes assessed for governmental expenses. In one of them the property is sold by administrative officers without judicial proceedings; in the other, a decree of court must be secured, foreclosing the lien of the assessment and directing a sale of the premises. Each constitutes ''due process of law,'' provided the landowner has an opportunity to be heard as to the apportionment of benefits. Upon the theory of respondents there is no reason why the legislature did not adopt the former method for the enforcement of the assessments of said board of equalization. The obvious purpose, however, in providing for a suit in court, was to afford an opportunity for a judicial determination of the correctness of the apportionment.

But it seems idle to pursue this method of reasoning as the legislative declaration has placed the matter beyond cavil or serious controversy. To say that the list of the charges assessed against the land ''shall be *prima facie* evidence of the matters therein contained'' certainly excludes the idea that it is conclusive evidence of said matters. Section 1837 of the Code of Civil Procedure defines conclusive evidence as follows: ''Conclusive or unanswerable evidence is that which the law does not permit to be contradicted. For example, the record of a court of competent jurisdiction cannot be contradicted by the parties to it.'' While *prima facie* evidence as defined in section 1833 of the same code ''is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. For example: the certificate of a recording officer is *prima facie* evidence of a record, but it may afterward be rejected upon proof that there is no such record.'' The distinction could not be made any plainer by a thousand illustrations or by reference to the numerous decisions upon the subject.

Applying to the situation here the familiar canon embodied in section 1858 of the Code of Civil Procedure, as follows: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all," we necessarily reach the conclusion that the assessment of said board of equalization is not final but is subject to revision by the judicial tribunal designated in the statute.

Reasons could be suggested readily why the legislature should make the assessment of the local commissioners subject to correction in a judicial proceeding but we are not, of course, concerned with the policy of the law. It is sufficient to ascertain that it has been so provided.

The only debatable question, apparently, that can arise is whether the litigation of the validity of the assessment may be had in an action such as this brought by the property owners themselves to nullify the action of the board of equalization and to restrain the trustees from bringing suits of foreclosure.

In the Reclamation Act, it may be observed, there is a provision—not found in the drainage statute—contained in section 3493½ of the Political Code authorizing the board of trustees, at any time within one year after the filing of the list of charges against the land, in the name of the district, to commence and prosecute an action in the superior court of the county where the land is situated, to determine the validity of the assessment. The proceeding culminating in a judgment is outlined in said section and it is provided that "the judgment given and made in the action brought under the provisions of this section shall be conclusive between the parties thereto as to the validity or invalidity of the assessment."

In the absence of that specific direction it might be questionable whether the board of trustees could maintain such action under the Drainage Act, the course provided for therein being a foreclosure proceeding. But said section 14, in addition to foreclosure, does clearly contemplate a distinct action to determine the validity of the assessment. While not

specifically authorizing the owners of the property to maintain such action, as the real parties in interest, they are, of course, proper plaintiffs to such procedure.

Again, since the assessment made by the commissioners is a lien upon the land and this assessment is not conclusive upon the owner and is not valid or binding unless made and levied in proportion to benefits, upon well-recognized and familiar principles of equitable cognizance it plainly follows that the owner is clearly within his rights in invoking the power of the court to restrain the enforcement of the apparently valid but, in reality, *invalid* lien and to remove the cloud which has attached to his property.

We find nothing in any of the cited cases opposed to the foregoing views unless perchance in one or two that have been expressly overruled.

In *Hagar* v. *Reclamation Dist. No. 108,* 111 U. S. 701, [28 L. Ed. 569, 4 Sup. Ct. Rep. 663], there was under consideration by the supreme court of the United States the Reclamation Act of 1868. Its validity was upheld in an opinion prepared by Mr. Justice Field. Among the interesting questions therein discussed is the legal significance of the familiar phrase ''due process of law.'' The appellant contended that this fundamental principle was violated in the assessment of his property,·''inasmuch as it was made without notice to him, or without his being afforded any opportunity to be heard respecting it, the law authorizing it containing no provision for such notice or hearing.'' In reply to this contention it was declared that, where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal than where life or liberty is involved, ''and whether notice to him is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable.'' But the complete answer to appellant's contention is manifestly found in this statement of the court: ''The assessment under consideration could, by the law of California, be enforced only by legal proceedings, and in them any defense going either to its validity or amount could be pleaded. In ordinary taxation, assessments, if not altered by a board of revision or of equalization, stand good and the tax levied may be collected by a sale of the delinquent's property; but assessments in California, for the pur-

23 Cal. App.—32

pose of reclaiming overflowed and swamp lands, can be en-
forced only by suits, and of course, to their validity it is
essential that notice be given to the taxpayer and opportunity
be afforded him to be heard respecting the assessment. In
them he may set forth, by way of defense, all his grievances.
(*Reclamation District No. 108* v. *Evans,* 61 Cal. 104.)''
While the discussion there was addressed to a different con-
tention from what is presented here, the availability and
efficacy of the suit in court to test the validity of the assess-
ment are unqualifiedly affirmed. And it may be said that
section 3463 of the Political Code accords to the charges as-
sessed by the commissioners under said Reclamation Act the
same potency and attaches to it the same significance as evi-
dence in the suit to enforce the lien or to determine its va-
lidity as does said section 14 of the Drainage Act to the
charges assessed by said commissioners sitting as a board of
equalization. The charges assessed by the former, in other
words, bear the same relation to the suit in court to deter-
mine their validity as do the charges assessed and equalized
by the commissioners under the Drainage Act. It is true
that there is no provision for a board of equalization under
the Reclamation Act as there is under the act herein but that
circumstance does not affect the question before us. It simply
means that the property owner in the drainage district is
afforded an additional opportunity to present his grievance
to the commissioners.

In *People* v. *Sacramento Drainage District,* 155 Cal. 373,
[103 Pac. 207], the scope and purpose of such legislation are
comprehensively and thoroughly discussed and the validity
of the act therein involved and the conclusiveness of the
assessment therein provided for are upheld, but the act therein
discussed itself provides that ''the decision of said board of
drainage commisioners shall be final and therefore said assess-
ment list shall be conclusive evidence that the said assessment
has been apportioned according to the benefits which will
accrue to each tract of land in said district.''

In *California etc. Co.* v. *Los Angeles,* 10 Cal. App. 191,
[101 Pac. 547], the assessment made by the county assessor
and equalized by the county board of equalization, to which
plaintiff had successfully made an application for a reduction
of its assessment, was held to be conclusive. This is in ac-

cordance with the express provision of the law found in section 3678 of the Political Code.

In *People* v. *Hagar*, 52 Cal. 171, it was indeed held that, in the absence of fraud, the decision of the commissioners is conclusive against the property owner. At that time, however, the law provided that "the district attorney shall proceed at once against all delinquents in the same manner as is provided by law for the collection of state and county taxes" and it was not an unreasonable inference that it sufficiently appeared to be the intention of the legislature that the assessment by the commissioners should be conclusive. However, if there is anything in that case or in *People* v. *Hagar,* 66 Cal. 59, [4 Pac. 951], opposed to appellants' position here, it must be deemed to have been overruled by *Reclamation District No. 108* v. *Evans,* 61 Cal. 104, and in *Reclamation District* v. *Phillips,* 108 Cal. 306, [39 Pac. 630, 41 Pac. 335]. In the last two cases, as in the one in 111 U. S., it was held that "the assessment under consideration could by the law of California be enforced only by legal proceedings, and in them any defense going to its validity or amount could be pleaded."

In the Phillips case, a rehearing was granted after decision in department upon the point that the conclusion announced in the first opinion that "the court erred in excluding the evidence tending to prove that defendants' land was not benefited by the reclamation works, and was arbitrarily and excessively assessed without regard to proportionate benefits," was unwarranted, but the whole court adhered to the department position. The cases are therein reviewed and, while much consideration is given to the fact that the only opportunity afforded to the landowner to be heard was in defense of the action brought in court, and while the court was apparently of the opinion that without the provisions in reference to the judicial proceeding the law could not be upheld, there is nothing to indicate that had the section contained an express provision for notice the decision would have been otherwise or that the court would have undertaken to render nugatory the additional recourse plainly provided for the benefit of the property owner.

In *Swamp Land Dist. 341* v. *Blumenberg,* 156 Cal. 532, [106 Pac. 369], it was held that an assessment, the regularity and original validity and binding form of which was ad-

mitted, was not rendered unenforceable by reason of certain subsequent events. It was therein declared, though, that "if the validity of the assessment has not been established in an action as provided in section 3493½ of the Political Code, all questions involving the regularity of the assessment proceedings, the amount of the charge as compared to the benefits conferred, and the fact that the cost was apportioned in proportion to the benefits, is open to investigation in defense to a suit to foreclose the assessment lien."

Of course, if the trial court in the case at bar should find that the assessment was valid, no doubt the property owners would pay it without further delay, or if not, there is no doubt under proper pleadings that a decree of foreclosure could be entered in the same suit. But, at any rate, we are assured that plaintiffs should be accorded the privilege of making the offered showing and the judgment is, therefore, reversed.

Chipman, P. J., and Hart, J., concurred.