[Sac. No. 1758. Department One.—August 12, 1910.]

RECLAMATION DISTRICT No. 17, Respondent, v. CARLO BONBINI et al., Appellants.

RECLAMATION DISTRICT—CONTEST OF ASSESSMENT—RIGHTS OF LAND-OWNERS—ACTION TO DETERMINE VALIDITY.—Where the landowners who are taxpayers in a reclamation district are given no opportunity to contest an assessment levied thereby before the commissioners or the board of supervisors, they may urge any objections to its validity in an action to enforce the same, or in an action brought by the reclamation district under section 3493½ of the Political Code, in which a method is provided by which all objections to the assessment may be conclusively determined after such notice and hearing as the property-owners are of right entitled to.

ID.—CLEAR AND DEFINITE PLAN FOR NEW WORK ESSENTIAL—MANDA-TORY PROVISIONS OF CODE.—The law as embodied in sections 3454 and 3455 of the Political Code, is mandatory as to all new work, and contemplates the adoption by the trustees of the reclamation district of a clear and definite plan of all new work not embraced in the original and other previous plans already filed, before any assessment is levied therefor, so that all concerned may have means of ascertaining the specific purposes of the assessment, the real value of the proposed work, and the benefit to be derived therefrom.

ID.—SUPPLEMENTAL ASSESSMENT FOR NEW WORK—SAFEGUARD NOT RE-
MOVED.—The mandatory provisions of sections 3454 and 3455 of the
Political Code as to all new work are not affected as to the safeguard
thereby required, simply because the assessment including such new
work was a supplemental assessment under section 3459 of the Polit-
ical Code, instead of the original. In such case, the statement of
the new work to be done, made by the trustees to the supervisors,
must be as clear and definite as in the case of original plans for
new work.

ID.—INSUFFICIENT ASSESSMENT FOR NEW WORK—REPAIR AND RAISING
OF LEVEES ALONG RIVER AND SLOUGH.—An item "to repair and raise
the levees along the San Joaquin River and French Camp slough, the
estimated cost of which is $33,000," without any designation of the
amount required "to raise the levees," which is some undesignated
part of the whole sum, is insufficient to give the landowners the
notice which the law contemplates they should have, and insufficient
to serve as a basis for the assessment in so far as such proposed
work is concerned.

ID.—INSUFFICIENT ITEM FOR "DRAINING DITCHES" AND "PUMPING
PLANTS."—An item of "drainage ditches to be dug throughout the
district and pumping plants to be installed," at an estimated cost
of twenty-five thousand dollars, is likewise insufficient to be the
basis for an assessment. No inference can be drawn therefrom as
to the character or amount of ditch work to be done, its estimated
cost, or the location of any proposed ditches; nor is there anything
from which it may be known how many pumping plants are pro-
posed, or their estimated cost. In a matter of so much importance
as a proposed system of drainage ditches, the law clearly contem-
plates a plan showing in some detail, and with some degree of cer-
tainty, the extent of the proposed work, and the general location
of the proposed ditches, with estimates of the cost thereof.

ID.—INVALID INCLUSION OF PRIOR ASSESSMENT—DEFECT IN NAME OF
ONE OWNER.—Where a prior assessment was held invalid only as
to a particular tract of land on the ground that it was assessed to
the wrong person, and was not held invalid in any other respect, or
as to any other landowner, section 3466½ of the Political Code,
does not authorize the aggregate amount paid by all landowners in
satisfaction of such assessment to be included in a subsequent
assessment.

ID.—INVALID ASSESSMENT TO ONE OWNER NOT AFFECTING VALIDITY AS
TO OTHERS.—The invalidity of the assessment as to the one owner
does not render the assessment invalid as to other landowners, and
none of them could have successfully resisted the payment of their
assessments because of such special invalidity as to one owner, there
never having been any determination of its invalidity as to other
owners.

ID.—OBJECT AND SCOPE OF REIMBURSEMENT PROVISION.—The whole object
of section 3466½ of the Political Code is to provide for the reim-

bursement of those who may have paid the amounts assessed against their lands, where such lands were not liable therefore because of the invalidity of the assessments against them, prior to a determination of such invalidity.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

J. A. Plummer, Geo. F. McNoble, and John E. Budd, for Appellants.

Nicol & Orr, and Aug. E. Muenter, for Respondent.

ANGELLOTTI, J.—This is an action under section 3493½ of the Political Code to determine the validity of an assessment levied for the purposes of Reclamation District No. 17 on lands within the district within one year prior to the filing of the complaint. Judgment was given for plaintiff confirming the assessment, and defendants, who are landowners within the district, appeal from such judgment and from an order denying their motion for a new trial.

Reclamation District No. 17 was organized prior to January 1, 1873, and has ever since been prosecuting the object for which it was created. It is claimed by plaintiff that the assessment in question is one of those supplemental or additional assessments provided for by section 3459 of the Political Code. It is there provided that "if the original assessment is insufficient to provide for the complete reclamation of the lands of the district, or if further assessments are from time to time required to provide for the protection, maintenance, and repair of the reclamation works, the trustees must present to the board of supervisors of the county in which the district is situated, . . . a statement of the work done or to be done, and its estimated cost, and such board must make an order directing the commissioners who made the original assessment, or other commissioners, to be named in such order, to assess the amount of such estimated cost as a charge upon the lands within the district, which assessment must be made and collected in the same manner as the original assessment." Under other sections it is the duty of three commissioners

to be appointed by the board of supervisors to view and assess upon the land of the district "a charge proportionate to the whole expense and to the benefits of which will result from such works," and to make and file with the county treasurer a list of the charges against each tract. (Pol. Code, secs. 3456, 3460, 3461.) This list constitutes the assessment-list. The taxpayer is given no opportunity to contest this assessment before the commissioners or the board of supervisors, and, of course, has the right to urge any objection going to the validity of the assessment against his land in an action brought for the enforcement of the same, or in an action like the one before us, one given by the legislature to provide a method by which all objections to the assessment may be conclusively determined after such notice and hearing as the property-owners are of right entitled to. (*Reclamation Dist.* v. *Sels,* 117 Cal. 164, [49 Pac. 131]; *Reclamation Dist.* v. *McCullah,* 124 Cal. 175, [56 Pac. 887].)

The assessment-list involved in this case was filed with the county treasurer of San Joaquin County on August 29, 1907. The assessment was for the sum of $113,014.07. The statement presented to the board of supervisors by the trustees of the reclamation district upon which this assessment was based, showed that $27,514.07 thereof was for the purpose of reimbursing certain land-owners of the district on account of payments theretofore made by them on a previous assessment alleged to have been adjudged void. (Pol. Code, sec. 3466½.) We shall refer to this portion of the assessment hereafter. Six thousand dollars was for work actually done in "the protection, maintenance and repairs of said reclamation works which said works consists of strengthening the levees, watching the same during high water and protecting them as far as possible against washouts and breaks," and for which work the district was legally liable. The "statement" of the work to be done and its estimated cost was as follows: (a) "To extend the head levee for about three-fourths miles and raise the present head levee on an average of two feet, the estimated costs of same is $5,500." (b) "To close the breaks of the levee near and under what is called the Corral-Hollow bridge, the estimated costs of which is $2,500." (c) "To close the two breaks of the levee on the river, at the lower end of the district, the estimated costs of which is

$10,000." (d) "To repair and raise the levees along the San Joaquin River and French Camp slough, the estimated costs of which is $33,000." (e) "To cause drainage ditches to be dug throughout the district and pumping plants to be installed, the estimated costs of which are $25,000." (f) "To defray costs of incidentals for engineering work, expenses of superintending and the costs of calling the assessments now proposed to be made, estimated at $3,500."

It is claimed that the adoption and reporting of plans for the new work to be done was a prerequisite to a valid assessment, and that the foregoing statement as to such work was utterly insufficient in detail to constitute such a plan or any basis for the portions of the assessment based thereon. It is obvious, and there is no pretense to the contrary, that a large portion of the work to be done consists of new work not embraced in the original plans for the reclamation of the lands of the district. There is no denial of the claim of defendants that the only suggestion as to any of such work, so far as plan or statement is concerned, is that to be found in the "statement" we have already set forth. Such new work is (a) "to extend the head levee for about ¾ miles and raise the present head levee on an average of two feet," cost fifty-five hundred dollars; (d) "to . . . raise the levees along the San Joaquin River and French Camp slough," which is combined in the statement with "repairs" of such levees, the aggregate cost of repairing and raising being estimated at $33,000, and (e) "to cause drainage ditches to be dug throughout the district and pumping plants to be installed," at a cost of $25,000. It seems clear to us that the law contemplates the adoption by the trustees of a clear and definite plan of all new work not embraced in the original and other previous plans already filed, before any assessment is levied therefor, so that all concerned, including the landowners who pay the tax, may have means of ascertaining the specific purposes of the assessment, the real value of the proposed work, and the benefit that will be derived therefrom. By section 3454 of the Political Code, it is provided that the board of trustees must prepare original plans, and "thereafter, at any time, in its discretion, modify or change such original plan or plans, or adopt new, supplemental, or additional plan or plans," when, in its judgment, the same shall

become necessary. By section 3455 of the Political Code, it is provided that the trustees must report such original plan or plans of its work "and every such new, supplemental,. or additional plan, if any, together with estimates of the cost of the works necessary for the reclamation of the lands of the district in pursuance of any such plan or plans." These provisions appear to be mandatory as to all new work not included in the scope or design of the plans already adopted and reported, and it could not have been contemplated that the effect of section 3459 of the Political Code would be to remove this safeguard simply because the assessment including such new work was a supplemental assessment instead of the original. There could be no reason for such a distinction. It may well be that such new work may be provided for in an assessment proceeding inaugurated under section 3459 of the Political Code, but if so it seems clear to us that the "statement of the work . . . to be done" made by the trustees to the supervisors must be as clear and definite as in the case of original plans. We cannot doubt that it was intended that the landowner should have such notice as would thus be afforded, and it is upon such a definite statement or plan that the assessment is based. (See *Reclamation Dist.* v. *Sels,* 117 Cal. 166, [49 Pac. 131].) We may assume that the statement of the first item of proposed new work viz., the extension of the head levee for about three-fourths miles and the raising of the present head levee on an average of two feet is sufficient, though probably not as clear and definite as it might be made. But we do not see how this can be held as to the item of raising the levees along the San Joaquin River and French Camp slough, which, including also the "repair" of said levees, amounts to the large sum of thirty-three thousand dollars, without any designation of the amount proposed to be used for raising the levees. There was absolutely nothing in the statement from which any one could draw an inference as to the extent to which the trustees were to raise these levees, if indeed they had come to any conclusion upon that point themselves, which does not appear. It does appear that the landowners by resolution adopted May 4, 1907, had authorized and directed the trustees to formulate a plan for the reclamation and protection of the lands, including their drainage, and to employ necessary engineers and

chain-men to furnish the proper plan and estimate of cost, but nothing appears to have been done by the trustees under this resolution other than the presentation of the statement under discussion. So far as the particular point we are discussing is concerned, we have the mere statement of the trustees that they propose "to . . . raise the levees," and that the estimated cost thereof is some undesignated portion of thirty-three thousand dollars. This, in our judgment, is utterly insufficient to give to the landowners the notice which the law contemplates they should have, and insufficient to serve as a basis for the assessment in so far as such proposed work is concerned. The item of "drainage ditches to be dug throughout the district and pumping plants to be installed," at an estimated cost of twenty-five thousand dollars, is likewise insufficient. There is no statement from which an inference can be drawn as to the character or amount of ditch work to be done, its estimated cost or the location of any proposed ditches. All these matters are apparently left for future determination by the trustees. Nor is there anything from which one can know how many pumping plants are proposed or their estimated cost. We have simply an aggregate estimate of twenty-five thousand dollars stated to be needed for drainage ditches to be dug and pumping plants to be installed. In such a matter as a proposed system of drainage ditches we think the law clearly contemplates a plan showing in some detail and with some degree of certainty the extent and character of the proposed work, and the general location of the proposed ditches. In *Reclamation Dist.* v. *Sels,* 117 Cal. 166, [49 Pac. 131], the plans and report held sufficient contained "not alone a general and comprehensive, but also a detailed statement of the character and amount of ditch work to be done, with estimates of the cost thereof, and also of the cost of the proposed pumping plant." Unless we are to hold that the plans and statement of work to be done, with the estimates of cost, are matters in no way affecting the validity of assessments based thereon, which we do not feel warranted in doing, we are satisfied that the assessment here involved must be adjudged invalid because of the absence of sufficient support in plan or statement of work to be done for any assessment for the two items we have discussed.

As stated before, the assessment included $27,514.07 to reimburse certain landowners under section 3466½ of the Political Code. That section, enacted March 2, 1899, provides:—

"In all cases in which an assessment shall have been levied since October first, eighteen hundred and ninety-six, or shall hereafter be levied, for reclamation purposes, upon the lands embraced within any reclamation district, and the assessment shall have thereafter been or shall be adjudged invalid, by any court of competent jurisdiction, and any landowner of the district shall have paid the amount assessed, in said assessment, against land belonging to him, before said assessment shall have been or shall be so adjudged invalid, the amount so paid by said landowner, together with the legal interest thereon from the date of its payment, shall be credited, by the treasurer of the county in which said land is situated, to the tract of land on which the same was paid, and shall be applied upon any assessment thereafter levied on the lands of the district, to the payment, *pro tanto,* of the amount therein assessed against said tract of land."

The uncontradicted facts in regard to this item are as follows: On October 5, 1897, a statement showing the necessity for an assessment of twenty thousand dollars was presented by the trustees to the board of supervisors. Commissioners were appointed to make the assessment upon the lands of the district, with the result that on November 11, 1897, the assessment-list was filed with the county treasurer. So far as appears, the only defect in these proceedings was that a small tract of land containing some sixty-nine acres belonging to one William S. Moss, was assessed to one Mary B. Odell, the statute requiring the list to contain "the names of the owners of each tract, if known, and if unknown, that fact" (Pol. Code, sec. 3461), and not then providing, as it now does, that no mistake in the name of the owner or supposed owner shall render the assessment invalid. Between November 11, 1897, and March 26, 1900, certain landowners of the district paid their assessments in amounts aggregating $16,641.95. On March 5, 1900, the reclamation district brought an action against said Mary B. Odell to foreclose the lien of said assessment and prosecuted the same to a judgment in its favor. This judgment was never satisfied.

On February 17, 1905, the successor in interest of said William S. Moss instituted an action in the superior court of San Joaquin County against the reclamation district to have the lien of said assessment and said judgment declared to be invalid against said property because the assessment had not been made to the true owner of the property. The trial court found the facts as to the assessment to be as alleged and decreed that the reclamation district had no lien on the property under said assessment or judgment. It was further shown that several actions had been begun to collect from different landowners the amounts due from them on this assessment, but the result of said actions was not shown. It was further shown that no action was ever brought under section 3493½ of the Political Code, to have the validity of the assessment determined. The amounts paid on the assessment aggregated, as has been said, $16,641.95, leaving $3,358.05 unpaid. To provide for such credits to the landowners who had paid their assessments as are specified in section 3466½ of the Political Code, the amount of $27,514.07 was included in this assessment, being the $16,641.95 paid together with $10,872.12 interest.

Learned counsel for plaintiff make no reply to the claim of defendants that the facts shown make it apparent that the case is not one within the provisions of section 3466½ of the Political Code. It appears to us that the claim is well based. While there probably would be nothing inequitable in any proceeding the result of which would be to simply compel landowners who did not join in paying for necessary work done for the district to now pay their share for that work with interest, we must find the authority for any such proceeding in the statute, and if the authority is not so conferred, it cannot be held to exist. In this case the previous assessment was not adjudged invalid as to work upon any ground that affected its validity as to the other landowners, in other words, there has never been any adjudication of its invalidity as to any land except that of Moss, and the adjudication as to him was simply that the assessment was not valid against his land because of a mistake in the assessment-list in the name of the owner, a matter that apparently could have been corrected by the commissioners even "after the lists shall have been filed with the treasurer of the county." (Pol.

Code, sec. 3460.) We do not understand that this renders the assessment invalid as to the other landowners, or that any of them could have successfully resisted the payment of their assessments because of this mistake. The whole object and scheme of section 3466½ of the Political Code was to provide for the reimbursement of those who may have paid the amounts assessed against their lands where such lands were not liable therefor because of the invalidity of the assessments against them, prior to a determination of such invalidity. The showing here was that the lands upon which the amounts were paid were legally liable therefor, and that there has been no judgment of invalidity affecting the same. The amount of $27,514.07, for the purpose of reimbursement, was, therefore, improperly included in the assessment.

In view of what we have said, the assessment must be held invalid, and it would serve no useful purpose to consider any other point made by defendants.

The judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.