[Sac. No. 2141.  Department Two.—April 5, 1915.]

# RECLAMATION DISTRICT No. 730, Respondent, v. ELLA L. HERSHEY et al., Appellants.

Reclamation District—New Work—Necessity for Adoption of Definite Plan.—The reclamation law contemplates the adoption by the trustees of the reclamation district of a clear and definite plan of all new work embraced in the original and other previous plans already filed, before any assessment is levied therefor, so that all concerned, including the landowners who pay the tax, may have means of ascertaining the specific purpose of the assessment, the real value of the proposed work, and the benefit that will be derived therefrom.

Id.—Modification of Original Plan—Report of Engineer—Sufficiency of Specifications and Estimates.—Where a modification of the original plan of reclamation has been adopted by the board of directors of a reclamation district, the report of the engineer of the district, framed in conformity therewith and specifying the work necessary to be done, is sufficient, where it discusses and describes with elaborate care the additions to be made to the levee system, and gives detailed specifications of the proposed new levee work, with separate estimates of cost of the different branches of the work, followed by a recapitulation in which the amount of work done and to be done is segregated and separately stated, the cost of the amount done being segregated from the cost of the amount to be done.

Id.—Construction of Report—Work for Which Expense had Been Incurred.—In the construction of such report, a statement therein under the designation of "Improvement of old Levees and Construction of new Levees," that "a portion of said work hereinbefore recommended has been done at a cost of $24,248.25 in excess of the estimates contained in the original plans of reclamation; that to complete said work will require the further sum of $44,725.76," is to be interpreted and its sufficiency determined in accordance with the context, and so construed it is held sufficient as a statement of the particular work done for which this expense had been incurred.

Id.—Performance of New Work on Old Levees—Description of Levees.—There is nothing in the law requiring the report and the adopted plans by metes and bounds to specify where the actual work of raising a levee has been performed. The location and dimension of the original levees being specified, as well as the dimensions and locations of the raised and strengthened levee, inspection upon the ground will fully answer the purpose of showing where and to what extent the new and unpaid for work has been done.

ID.—MODIFICATIONS OF OLD PLANS NOT A NEW PLAN OF RECLAMATION. Where the board of directors of the district, on a specified date, adopted a modification of the original plan by increasing the size and dimensions of an original levee and subsequently adopted another modification calling for the construction of a new levee, each of such modifications did not constitute a wholly separate, distinct, and independent plan of reclamation. The general plan still continued in its entirety.

ID.—STATEMENT OF WORK DONE OR TO BE DONE UNDER MODIFIED PLANS. The statute does not require a statement of the work done or to be done under each of the modified plans of reclamation, but only a statement of the cost of the work necessary for the reclamation of the land in pursuance of any of the plans. If the original assessment is insufficient and further assessments are thus from time to time required, the law (Pol. Code, secs. 3455, 3459) exacts merely a statement of the work done or to be done and its estimated cost.

ID.—AGGREGATE ESTIMATE OF COST OF SEPARATE PHASES OF WORK.— Section 3455 of the Political Code, by not requiring the contrary, permits an aggregate estimate of the cost of separate phases of the reclamation work; consequently an assessment will not be held invalid merely because an aggregate estimate is made for the acquisition of the rights of way of all levees and another aggregate estimate for the construction thereof, without a separate estimate of the cost of acquiring the right of way for a particular proposed new levee, nor for the construction of the levee itself. If an assessment could ever be overthrown for this reason, it would be in a case where such an estimate manifestly was injurious to the property owner, which is not the case here presented.

APPEAL from a judgment of the Superior Court of Yolo County and from an order refusing a new trial. W. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

Hudson Grant, G. Clark, and Black & Clark, for Appellants.

Arthur C. Huston, and Harry A. Huston, for Respondent.

HENSHAW, J.—This action was prosecuted by plaintiff to foreclose a lien upon the lands of defendants under a reclamation district assessment imposed upon those lands. Plaintiff was given judgment and from that judgment and from the order denying defendants' motion for a new trial defendants have appealed.

In 1907 the original plan of reclamation of this district was reported to the board of supervisors of Yolo County, was adopted and an assessment levied in conformity therewith. This assessment was contested by these appellants, and in *Reclamation District* v. *Hershey*, 160 Cal. 692, [117 Pac. 904], their appeal from the adverse judgment of the trial court was considered and denied.

Plaintiff, Reclamation District, is bounded on the north and east by the Sacramento River; on the south by an east and west line, and on the west by the right of way of a railroad company. In the northwesterly corner of the district is a part of the town of Knight's Landing, the town extending northwesterly. The waters against which the district was organized to protect itself were those of the Sacramento River proper and those of Cache Creek, a tributary of the river, lying westerly of the district. The severe floods of 1909 showed the inadequacy of the protective works which had been constructed under the original plan of reclamation. Thus the southern levee it was thought would be a sufficient protection against flood waters in that locality, but proved not to be so. A ridge known as Knight's Landing ridge it was thought would be a natural protection to the district on the northwest. This Knight's Landing ridge is a natural ridge extending from the high land on the west to the westerly bank of the Sacramento River northwesterly from the town of Knight's Landing. It separates the lower portion of Colusa basin from the upper portion of Yolo basin, in the latter of which basins the reclamation district is situated. But the flood waters flowed over this ridge, compelling the construction of a levee upon this high ground. By this unprecedented flood of 1909 the trustees of the district learned that it was the part of wisdom, if not of necessity, to modify and enlarge their scheme of reclamation to protect the lands of the district. Therefore the board of trustees of the district, on April 5, 1909, adopted a modification of the original plan by increasing the size and dimensions of the back or south levee which served to protect the lands of the district from the flood waters of Cache Creek, and further to guard against the unexpected flow of waters over Knight's Landing ridge they adopted on April 19th another modification calling for the construction of a levee on that ridge. After the adoption of the modification of April 5th work was done by

the district to bring the south levee up to the standard of the modified plan. No work upon this was done until after the adoption of the modified plan. On the thirteenth day of November, 1909, the engineer of the district made his report, specifying the work necessary to be done, in addition to that called for by the original plan, to effect a thorough reclamation of the lands. In this report reference was made to the modification of the original plan adopted by the board of trustees on April 5th and 19th, and the report was framed in conformity with the modified plans adopted by the trustees of the district upon the dates mentioned. The engineer's report, under the designation of "Improvement of old Levees and construction of new Levees" discusses and describes with elaborate care the additions to be made to the levee system and gives detailed specifications of the proposed new levee on Knight's Landing ridge. Separate estimates of the cost of the different branches of the work are made and stated, and this is followed by a recapitulation in which the amount of work done and to be done is segregated and separately stated, the cost of the amount done being segregated from the cost of the amount to be done.

All formal actions in the matter of the assessment here in question were regularly taken. The objections of appellants to the assessment are extremely technical. Thus, appellants say that the engineer's report under the designation of "Improvement of old Levees and construction of new Levees" concludes as follows: "That a portion of said work hereinbefore recommended has been done at a cost of $24,248.24 in excess of the estimates contained in the original plans of reclamation; that to complete said work will require the further sum of $44,725.76," and appellants insist "that this statement does not describe the work, the doing of which has cost the district $24,248.24." It is said that the vital defect in the report is that it does not advise the board of trustees, or any other person, what particular work has been done for which this expense has been incurred, and *Reclamation District* v. *Bonbini,* 158 Cal. 197, [110 Pac. 577], is relied upon to support appellants' position. What the Bonbini case declared and very particularly declared was "That the law contemplates the adoption by the trustees of a clear and definite plan of all new work embraced in the original and other previous plans already filed, before any assessment is levied there-

for, so that all concerned, including the landowners who pay the tax, may have means of ascertaining the specific purpose of the assessment, the real value of the proposed work and the benefit that will be derived therefrom.'' When the whole of the engineer's report is considered, and not the fragmentary portion of it quoted and relied on by appellants, it is seen that in that report the location, elevation, and dimensions of the levee work are carefully given, with the data from which the cubical contents of the completed levee may be estimated and the number of cubic yards in place and to be put in place to bring the levee up to standard. It is in this connection that the report states that a portion of this work, that is the work of bringing the levee up to standard, has been done at a cost of twenty-four thousand dollars in excess of the estimate contained in the original plan of reclamation, and that the further sum of forty-four thousand dollars is required to complete the work. The report of the engineer is full, elaborate, and understandable, and in the particular under consideration affords all the information which the law requires, and much more than was afforded in the Bonbini case by a specification held to be sufficient, that specification being merely: ''To extend the head levee for about three-fourths of a mile and raise the present head levee on an average of two feet, the estimated cost of same is $5500.'' Here the one purpose is the raising of the levees. The expenses arising and to arise have been accurately and separately stated. In the Hershey case, 160 Cal. 692, [117 Pac. 904], in the petition for rehearing this court was asked to condemn the original plan of this district upon the ground that there was no separate estimate of the cost of raising and strengthening of the existing levees, and by denial of the petition we held the objection to be untenable. And finally upon this point it may be said that there is nothing in the law requiring the report and the adopted plan by metes and bounds to specify where the actual work of raising the levee has been performed. The location and dimensions of the original levee have been specified, as well as the dimensions and locations of the raised and strengthened levee, and inspection upon the ground will fully answer the purpose of showing where and to what extent the new and unpaid for work has been done. In the Bonbini case the report stated, ''To cause drainage ditches to be dug throughout

the district and pumping plants to be installed, the estimated costs of which are $25,000.'' Here was an inclusion in the one estimate of the cost of digging ditches and establishing pumping plants, and nothing was stated from which knowledge could be obtained of the amounts to be expended for each of these separate purposes. But in the plan before us the maps show the location of the ditches by scale and dimensions. The plan refers to the drainage ditches, giving a specific estimate of cost of deepening, widening, and repairing them.

Appellants would have us hold that each of the modifications of the original plan of reclamation constituted a wholly separate, distinct, and independent plan of reclamation. Such, however, is not the fact, as the foregoing statement shows. The general plan still continued in its entirety, with necessary changes principally in the nature of strengthening the original works and enlarging the drainage ditches, made advisable, if not necessary by the experience of the flood of 1909. The statute does not require a statement of the work done or to be done under each of the modified plans of reclamation, but only a statement of the cost of the work necessary for the reclamation of the land in pursuance of any of the plans. If the original assessment is insufficient and further assessments are thus from time to time required, the law exacts merely a statement of the work done or to be done and its estimated cost. (Pol. Code, secs. 3455, 3459.) It would unduly and unnecessarily prolong this discussion to further consider in detail each of the technical objections here presented, and it must suffice to say that they are completely answered by the decisions of this court in *Reclamation District* v. *Clark*, 155 Cal. 345, [100 Pac. 1091]; *Reclamation District* v. *Hershey*, 160 Cal. 692, [117 Pac. 904], and *Reclamation District* v. *Diepenbrock*, 168 Cal. 577, [143 Pac. 763].

The original plan did not provide for the levee along Knights' Landing ridge, this being found necessary for the protection of the district after the experience of the flood of 1909. The modified plan calls for such levee. Its location, with the acquisition of the necessary right-of-way, is given, and its dimensions, with the statement that it is to be constructed seven feet above high water in the Colusa basin for the years 1908 and 1909. There is no separate estimate

given of the cost of acquiring the right of way for this proposed new levee nor for the construction of the levee itself, the estimate in this respect being embraced in a lump sum for the acquisition of the rights of way of all levees, and another aggregate sum for the construction thereof. But the answer to this objection is that section 3455 of the Political Code does not require that such segregation should be made, and in not requiring it permits an aggregate estimate of the cost of separate phases of the work. Therefore this court would not overthrow such an assessment merely because the cost of work of the same character was not segregated into its items, but if it ever overthrew an assessment for this reason it would be in a case where such an estimate manifestly was injurious to the property owner, and that is not the case here presented.

In conclusion, and after a careful review of the record in this case, we deem it proper to say that there is established upon the part of the trustees of this district a painstaking, faithful, and successful effort to comply with the law. This not alone in the matter of the plans and of the assessments, but in the disposition of the moneys. Reports were filed with the board of supervisors showing in detail the financial condition of the district, the moneys disbursed and the work done. In addition there was introduced in evidence an account book kept by the secretary showing the purpose for which the money represented by every warrant was expended. The result of this has been of great benefit. Practically no land within the district was farmed at the time that this reclamation work was undertaken. To-day the levees have been raised above the high water mark, pumping plants installed and the drainage system improved. This has been followed by a very great increase in cultivable and cultivated land and in a corresponding increase in their value. We are not unmindful of the fact that proceedings leading to such assessments are in their nature *in invitum* and that the property owner is entitled to have the courts scrutinize these proceedings with proper care. But this does not mean that an individual property owner may defeat an assessment by showing some minor ministerial or administrative defect upon a doubtful proposition in nowise involving any substantial right, and thus by excessive litigious astuteness secure benefits for his land for which either his neighbors will be

compelled to pay or for which he ultimately will himself be compelled to pay under a new assessment.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J,, concurred.

Hearing in Bank denied.