[Sac. No. 2194.   Department One.—February 24, 1916.]

## S. M. SPURRIER and HENRY KROHN, Appellants, v. RECLAMATION DISTRICT No. 17, Respondent.

RECLAMATION DISTRICTS—ASSESSMENTS—REQUIREMENTS AS TO DEFINITE PLANS AND ESTIMATES.—The reports, plans, and estimates of engineers of a reclamation district to be submitted by the trustees to the supervisors as the basis of an assessment under sections 3454 and 3455 of the Political Code should be sufficiently definite to enable interested persons, from their own knowledge of existing conditions or by personal inspection, to understand with reasonable certainty the work proposed to be done and the cost thereof.

ID.—INCIDENTAL EXPENSES.—It is not necessary that "incidental expenses" be segregated.

ID.—PROCEEDING UNDER SECTION 3462, POLITICAL CODE, TO DETERMINE VALIDITY—DISPOSITION OF PAYMENTS ON PREVIOUS ASSESSMENT NOT DETERMINED.—In a special proceeding brought under authority of section 3462 of the Political Code for the sole purpose of avoiding an assessment, a land owner within the district, who has paid his proportion of a previous assessment subsequently declared invalid by the courts, cannot have determined the questions as to whether he is entitled to credit on the later assessment for the payments made under the invalid assessment, or whether he is entitled to a return of the money so paid.

ID.—PAYMENTS UNDER INVALID ASSESSMENT—VALIDITY OF LATER ASSESSMENT.—The amendment of 1911 (Stats. 1911, p. 647) to section 3466½ of the Political Code does not contemplate that a former assessment declared invalid by the courts and the present assessment for future work shall be treated as a single assessment, and neither the principal paid in on the previous invalid assessment nor the interest on that payment from the time it was made should be taken into account in determining the validity of the present assessment as to lands for which the previous invalid assessment was paid, since such lands are assessed in the present assessment only for their proportion of the existing indebtedness and the cost of the proposed work.

ID.—PARTY NOT PREJUDICED CANNOT ATTACK ASSESSMENT.—A party who is not prejudiced in any way by an irregularity in levying an assessment cannot complain thereof, even if other property owners who are prejudiced have a right to complain.

ID.—FINDING NOT DISTURBED ON APPEAL WHERE EVIDENCE CONFLICTS.—Where there is a conflict of evidence upon the question as to whether an assessment for work proposed to be done is relatively disproportionate to the benefits to be derived from the work, the finding of the trial court will not be disturbed on appeal.

ID.—PLEADING—CONCLUSIONS OF LAW.—Allegations in the complaint that the lands of plaintiffs were not charged in the assessment attacked "with their just proportion of the former assessment," nor the "proper proportion of the costs of said reclamation," are conclusions of law.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

S. M. Spurrier, and A. H. Ashley, for Appellants.

Nutter & Orr, and Clary & Louttit, for Respondent.

LAWLOR, J.—This is an action brought under the provisions of section 3462 of the Political Code, as amended in 1911 (Stats. 1911, p. 644), by the appellants herein, owners of certain tracts of land in the defendant reclamation district, for the purpose of annulling or canceling all assessments (aggregating the sum of $2,764) upon their lands, which consist of three contiguous tracts having a total area of three hundred and four acres. The assessment levied upon

the lands of the appellants involved only levee and protective embankments. Upon the trial judgment was rendered in favor of the defendant. An appeal was taken therefrom and from the order denying plaintiffs' motion for a new trial.

(1) The record discloses that on October 16, 1911, the board of trustees of the defendant reclamation district filed with the board of supervisors its petition and report setting forth that the original and subsequent assessments levied upon the lands of the district had been and were insufficient to provide for the completion, protection, maintenance, and repair of the reclamation works thereof, and praying that three commissioners be appointed for the purpose of levying an assessment in the sum of $131,727.04 upon the lands of the district. The petition, including the accompanying maps and profiles, sets forth that the said sum of money was required for the purpose, among other things, of satisfying an indebtedness of $97,058.74 on account of outstanding warrants, approved by the board of supervisors. Other items are given as follows in the report:

"To raise levees to height shown in said profile and for completion of head levee and with dimensions when completed at a top width of 20 feet and side slopes of 3 to 1 and require deposit made by scraper and dredger of 70,000 cubic yards of the estimated cost of........$10,000

Rocking and brushing bank of San Joaquin River on lands of Sanguinetti and Colures...   5,000

Rocking and brushing levee at tower where power line of Standard Electric Company crosses San Joaquin River................    500

Estimated cost of superintendence, engineer's fees, brushing and harrowing levees and incidentals   2,560

Estimated cost of secretary's salary, expenses of collecting assessment and other incidental expenses .................... .................   2,500"

It further appears in the report that "in the reclamation of the lands within said district there have been constructed a head levee, a levee along the San Joaquin River and a levee along French Camp Slough and also a levee along the French Camp road, as shown by map of said district and profile of said levees attached to report . . . hereunto attached." The attached report of the engineer which is mentioned in the

petition refers to the same items as follows: ''The levees, under the efficient management of your superintendents, have been steadily raised and strengthened. A new head levee, designed to protect the district from the water of a flood far greater than that experienced this spring, has been completed. Part of the French Camp Toll road, forming the northeast side of your district and hitherto a source of danger from the flood waters of French Camp Slough, has been raised to a height far above the flood plane of that slough and the Board of Supervisors intend to extend the same to the Southern Pacific Railroad, rendering this portion of your district as safe from overflow as any other portion. . . . The following work is necessary and will have to be done to place the district in first-class condition:

''70,000 cu. yds. of dredger fill on the levees
    bordering the San Joaquin River and
    French Camp Slough..................$10,000.00
''Rocking and brushing 1000 ft. east of the
    bank of the San Joaquin River, ¼ mile
    below the S. P. R. R. bridge............  5,000.00
''Rocking and brushing fill along east bank of
    San Joaquin River in the N. E. ¼ Section
    5, T. 1 S., R. 6 E., at power crossing......   500.00
''Incidental expenses .....................  2,500.00
''Superintendence, engineering, etc..........  2,560.00''

This report also contains references to the drainage system of the district. One of the attached maps was a map of the entire district, indicating by a meandering line, or lines between engineer stations, the present route of the levees along the French Camp Slough, the San Joaquin River, and the Walthall Slough, where it is known as the head levee, with the boundaries and names of the owners of the various tracts of land indicated, and containing columns of figures giving the elevations of the surface of all the lands of the district. The pumping stations, canals, and other data, with which we are not concerned herein, are also shown on the map. At the lower part thereof the right of way of the new head levee is indicated. Another map shows the profile lines of the entire system of existing levees with dimensions and elevations, the high-water mark of 1907 and 1911, respectively, the height to which it is proposed to raise the levees, and the

surface of the ground over which the new head levee is to be constructed. The names of the owners of the land upon which the present levees are located, the profile lines for the work done in the spring of 1911, and the location of canal and railroad crossings are also shown. A third map shows the right of way for the new head levee and a rough sketch of the location of the present head levee, with the breaches indicated. This map also gives the contours of the surface of the ground. Other maps are attached to the petition, which relate to the existing and proposed canals of the district. But as appellants are not assessed for drainage, no objection has been raised to the sufficiency of the petition in that behalf. Excepting for the part of the report dealing with a former assessment which had been declared invalid in *Reclamation District No. 17* v. *Bonbini,* 158 Cal. 197, [110 Pac. 577], which we shall presently consider, no other data was filed with the board of supervisors by the trustees.

Upon filing the petition and report the board of supervisors appointed the commissioners, who thereafter made an assessment for the amount prayed for and filed the list on March 28, 1912. An order was thereupon made fixing a time and place in conformity with section 3462 of the Political Code, and due notice was given for the filing by interested persons in writing of such objections as they might have to offer. Accordingly, various objections were filed, among which were those of the appellants. These were heard on May 21, 1912, and thereafter, on June 18, 1912, the board of supervisors filed its order approving the said assessment. On July 17, 1912, or within the prescribed period of thirty days (Pol. Code, sec. 3462), this action was commenced.

The first objection made by the plaintiffs, the appellants herein, was to the sufficiency of the petition and report, taken in connection with sections 3454 and 3455 of the Political Code, which empowers the trustees "to survey, plan, locate, and estimate the cost of the works necessary for the reclamation" and to report such "plan or plans of the work" to the board of supervisors, with estimates of the costs thereof, "together, also, with an estimate of incidental expenses." Relying upon the decision in *Reclamation District No. 17* v. *Bonbini,* 158 Cal. 197, [110 Pac. 577], the appellants point out that there is no data given in the petition and report to show the exact present location of the existing levees, their width

at the top, the slope of the sides, their present condition and mode of construction, or the number of cubic yards contained in them; that there is nothing to show the character or cost of the work done in other particulars; that there is not sufficient data to enable the land owners to compute the amount of the filling or excavating which is proposed to be done, at any particular point, upon the lands; and that no data is given by which the estimates of the board of trustees and the engineer as to the costs and expenses of the proposed work can be checked up. It is further claimed that the reference to the work on the old head levee and on the French Camp toll road levee as to the rocking and brushing and other particulars is too indefinite. Exception is also made to the estimate for rocking and brushing as not showing the exact location of the places where the work is to be done, the amount of brushing required and the cost thereof, the quantity and kind of rocks and the cost of putting the same in place, or the extent or location of both the scraping and dredging to be done. Among the other objections are included the failure to specifically state how long the engineer and the secretary were expected to be employed, the remuneration each was to receive, the character of their services, the charge for superintendence, the expenses of collecting the assessments, and the meaning of the incidental expenses. It is also claimed that the cost in each instance should be separately stated. And finally, in support of these various objections, the appellants say, "that there must be such description given the land owner that he will have notice and be informed of the location, character, plans, and probable cost of the work (*Reclamation District No. 17* v. *Bonbini*, 158 Cal. 197, 202, [110 Pac. 577]), so that he can make intelligent written objections under section 3462; and that money so reported and assessed must be kept and expended as a distinct and separate fund for which it is reported, assessed, and collected. (*Swamp Land Reclamation District No. 341* v. *Blumenberg*, 156 Cal. 532, 538, [106 Pac. 389].)"

We have thus stated, at some length, the data contained in the petition and its accompanying reports and maps, together with the general nature of the objections raised thereto by the appellants, because we think that a consideration of the facts themselves tend to furnish, in large measure, the answer to such objections. It should always be the aim of the offi-

cers of a reclamation district, however, to make the petition and reports as full and complete as is practical, to the end that the land owners may be reasonably informed of the various objects of the proposed assessment and have the means, at least, of determining the real value of the proposed work and its effect as regards the probable benefits to be derived therefrom, or the detriments which may result. Likewise the board of supervisors should not approve an assessment unless the law has been substantially complied with in this respect. But we do not think the law requires that the report of the trustees shall contain the elaborate and specific details contended for by the appellants. The statute only requires a report of the original, and supplemental plans, if any, "together with the *estimates* of the cost of the works necessary for the reclamation of the lands of the district in pursuance of any such plan or plans; together, also, with an *estimate* of incidental expenses." [The italics are ours.] (Pol. Code, sec. 3455.) Until the assessment has been approved by the board of supervisors, the moneys collected and the final contracts let for the work to be done, it would be extremely difficult for the trustees to state in minute detail the nature of each item of work proposed, the exact cost, and its precise location. Indeed, the expense of preparing such elaborate drawings and detailed estimates at a time when the approval of the plans or the assessment would still be uncertain would incur considerable expense without proportionate benefits to the district. Furthermore, the plans of the trustees may be subject to some change, particularly during the actual construction of the proposed improvements when, for instance, it may be decided by the engineers in charge, with the approval of the trustees, that it would be more practical to face a certain portion of the levee with rock than with brush, as first planned, or *vice versa*, or that the work on a particular embankment would be accomplished with greater facility by scraping from a higher point than by dredging from the river. The reports, plans, and estimates should, however, be sufficiently definite to enable interested persons, from their own knowledge of existing conditions, or by personal inspection, to understand with reasonable certainty the work proposed to be done and the cost thereof. In this case, the existing levees, canals, embankments, sloughs, and the like are visible and accessible, and furnish, in connection with the

reports, the means of verifying the plans of the projected work. In *Meyer* v. *Reclamation District No. 17* (Sac. No. 2193, *ante*, p. 104), [155 Pac. 635], this court, in considering other objections which had been raised to the same petition and report herein discussed, found that the items of "rocking and brushing" were sufficiently definite to satisfy the requirements of the law. As regards the "incidental expenses," it is sufficient to state that there is no provision of law which provides that they must be segregated. Although possibly the trustees could have set forth more in detail the existing condition of the levees and other details of the work done, or described more elaborately various items, such as the salaries of the secretary, engineer, and superintendent, we think that the petition is, on the whole, a sufficient compliance with the statute. It is not every omission to state all the details that will invalidate an assessment.

What has been said in *Meyer* v. *Reclamation District No. 17, supra,* and in other recent decisions of this court in answer to similar objections, is equally applicable to the objections interposed by the appellants. (*Reclamation District No. 730* v. *Hershey,* 169 Cal. 793, [148 Pac. 185]; *Reclamation District No. 673* v. *Diepenbrock,* 168 Cal. 577, [143 Pac. 763]; *Reclamation District No. 730* v. *Hershey,* 160 Cal. 692, [117 Pac. 904]; *Reclamation District No. 535* v. *Clark,* 155 Cal. 345, [100 Pac. 1091].) They are for the most part extremely technical. Upon this point, it was said in *Reclamation District No. 730* v. *Hershey,* 169 Cal. 793, [148 Pac. 185], "we are not unmindful of the fact that proceedings leading to such assessments are in their nature *in invitum* and that the property owner is entitled to have the courts scrutinize these proceedings with proper care. But this does not mean that an individual property owner may defeat an assessment by showing some minor ministerial or administrative defect upon a doubtful proposition in nowise involving any substantial right, and thus by excessive litigious astuteness secure benefits for his lands for which either his neighbors will be compelled to pay or for which he ultimately will himself be compelled to pay under a new assessment."

(2) In paragraph III of the statement of objections, filed with the board of supervisors, the appellants attack the validity of the assessment upon the ground that the present assessment was not proportionately levied upon all the lands of

the district, inasmuch as certain land owners who had not paid a former assessment, since declared invalid (*Reclamation District No. 17* v. *Bonbini*, 158 Cal. 197), are not charged in this assessment with their proper proportion of the costs of reclamation, or that, in any event, the appellants are entitled to credit for such payments as had been made upon their lands at the time of the former assessment, or to the return of the money, so paid, together with legal interest thereon, from the dates of the respective payments. The facts are that on August 29, 1907, an assessment amounting to $113,014.07 was levied upon the lands of the district, and that $89,827.21 had been paid thereon by various land owners, among whom were the grantors of appellants. On August 12, 1910, this entire assessment of 1907, as already stated, was declared void by this court. (*Reclamation District No. 17* v. *Bonbini, supra.*)

We will first consider whether the appellants are entitled to credit for the payments made on the invalid assessment. At the time of the above decision the owners would have been entitled to credit for such payments had they then been called upon to pay a new assessment. (Pol. Code, sec. 3466½, [Stats. 1899, p. 46].) The section, at that time, provided, in part: "In all cases in which an assessment shall have been levied . . . for reclamation purposes, upon the lands embraced within any reclamation district, and the assessment shall have thereafter been or shall be adjudged invalid, by any court of competent jurisdiction, and any land owner of the district shall have paid the amount assessed, in said assessment, against land belonging to him, before said assessment shall have been or shall be so adjudged invalid, the amount so paid by said land owner, together with the legal interest thereon from the date of its payment, shall be credited, by the treasurer of the county in which said land is situated, to the tract of land on which the same was paid, and shall be applied upon any assessment thereafter levied on the lands of the district, to the payment, *pro tanto*, of the amount therein assessed against said tract of land." The grantors of the appellants had paid, in three installments, the sum of $3,459.18 as their proportion of the invalid assessment. If this section had not, in the meantime, been changed, the appellants, accord-

ing to its terms, would have been entitled to credit for the said sum and interest.

But section 3466½ was amended in 1911 (Stats. 1911, p. 647), whereby all reference to the assessments which may have been paid in under an invalid assessment was omitted from its provisions, and a scheme provided which, in effect, amounted to a reassessment of the lands of the district for the costs of the reclamation work done by virtue of the invalid assessment. The amended section, after designating the lands which have not been charged with an assessment and those which had been charged under an assessment adjudged invalid, reads as follows: "Then such tract or tracts of land shall be charged in any subsequent assessment with such proportion of the former assessment, as the benefits derived by said land from the reclamation works for which the former assessment was levied bears to the whole amount of said former assessment; or a subsequent reassessment of such tract or tracts of land may be made separately for the purpose of charging said land with its proper proportion of the costs of reclamation. . . . " The legal effect of the amendment was, of course, to repeal the portion of the section which had been omitted, and leave the rights of those owners who had paid an assessment adjudged invalid unaffected by any express statutory provision as regards the obtaining of credit for such payments (*Finnan* v. *Reclamation District No. 273,* 26 Cal. App. 714, [148 Pac. 227, 152 Pac. 1197].) The omission was not supplied until 1915 (Stats. 1915, p. 350).

In their opening brief, however, the appellants contend that section 3466½, as it stood when these payments were made and the case of *Reclamation District No. 17* v. *Bonbini,* 158 Cal. 197, [110 Pac. 577], was decided, recognized the ownership of the land owners in the money so paid, and operated to create a contractual relationship between such owners and the district, which could not be impaired by subsequent legislation, and, that notwithstanding the amendment of 1911, they are entitled to such credit upon making the necessary payments upon the present assessment. On the other hand, the respondent declares that "the section involved permits a reassessment of the original assessment and interest without regard to benefits, and is therefore a statute authorizing a confiscation of property without due

process of law and without compensation." While we do not find it necessary to adopt either of these contentions, it seems to us that the section was rather intended, on the one hand, to relax the rule of the common law which only permitted the return of the illegal taxes or assessments when paid involuntarily or under legal compulsion (37 Cyc. 1174; *Justice* v. *Robinson,* 142 Cal. 199, [75 Pac. 776]), and, on the other, to conserve the interests of reclamation by providing a method for applying the credit "upon any assessment thereafter levied. . . . " (See *Reclamation District No. 17* v. *Bonbini,* 158 Cal. 197, [110 Pac. 577].)

But the appellants, in their reply brief, apparently abandon the contention that they are entitled to the credit, and assert that they are entitled to the actual return of the money. The contention made by them is thus expressed: "The legislature took away the theretofore existing sole, special remedy of the land owners, since that remedy was a limitation upon the land owner's common right to recover. When that limitation was wiped out, their common rights were liberated, and became applicable." No such relief can be afforded herein. This is a special proceeding brought under section 3462 of the Political Code for the purpose, alone, of annulling or avoiding the present assessment, and neither the question whether the appellants are entitled to credit for the former payments nor to the return of the money can be considered on this appeal. The remedy for the appellants to pursue, if any there be, would be to first demand of the treasurer of the county that said moneys be returned, with the legal interest thereon, or be applied in payment *pro tanto* of the present assessment, and upon refusal, to test the claim by appropriate proceedings.

3. In the written statement of objections filed with the board of supervisors the appellants say further: "And now here said objectors object to the whole assessment which is practically one, stating as grounds therefor that by said separate assessment above mentioned said lands which had not paid the former assessment, are not assessed with their proper proportion of the cost of the reclamation in said district according to the benefits received, and that by said separate assessment there is an inequality between the lands which have paid all former assessments and the lands which did not pay the former assessments which inequality favors

the lands which did not pay the former assessment.'' The appellants also call attention to the fact that no interest is charged against the delinquent owners. The trial court found, in this connection, "that in the estimate and assessment herein complained of no allowance was made for interest, as such, on moneys paid by land owners in Reclamation District No. 17 upon assessments which had theretofore been declared invalid, but the said commissioners in making this assessment charged said lands as had not paid prior assessments with such proportion of the former assessment as the benefits derived by said lands from the reclamation works for which said former assessment was levied (and?) bears to the whole amount of said former assessment.'' That is, the said lands were assessed for their proportion of the costs of the reclamation work of 1907, and, in addition, for the proposed work for 1912 as outlined in the report of the trustees, as well as their proportion of the existing indebtedness, represented by the outstanding warrants. The assessment list shows these two sums in separate columns and the total in another column. The amendment of 1911 makes no provision for the charging of interest, and, as is evident from the above finding of the court, the commissioners made no charge for interest in determining the amount of the present assessment levied upon those lands in lieu of the former assessment which had not been paid. At the same time, the commissioners assessed the lands of the appellants for the sum of $2,764, as already stated, on account of the proposed work and the said existing indebtedness, but did not reassess nor, in any manner, charge such lands on account of the assessment adjudged invalid.

In this connection the appellants claim that under the amendment of 1911 the two separate assessments now levied upon the lands which had not paid the former assessment must be regarded as a single assessment, consisting of the sum levied in lieu of the former assessment, and that levied to provide for the proposed work of reclamation and the said indebtedness. Upon like reasoning, they contend that the amounts theretofore paid on their lands in payment of the assessment thereafter adjudged invalid, together with the legal interest thereon from the dates of the respective payments, and the amount of the present assessment, should also be regarded as a single assessment—the whole con-

stituting the appellants' proportion of the costs of the reclamation work done and to be done in the district by reason of the respective assessments of 1907 and 1912. Upon this basis, the appellants argue that "relatively, a greater sum was apportioned to their lands than was apportioned" to certain other lands that had not paid the former assessment— a difference represented, in large part, as will presently appear, by the interest on the paid-in assessment. It is also said that "the assessments are not apportioned in an equitable manner; neither can it be said that the commissioners have apportioned such sums estimated according to the benefits that will accrue to each tract of land, respectively, by reason of the expenditures of said sums of money."

These contentions are illustrated in the briefs of the appellants by comparing the total sums that were paid upon their lands under the 1907 assessment, the legal interest thereon, and the amount of the 1912 assessment with the assessments now levied on the lands of Caroline B. McDougald and Mary B. Percival, whose lands, it is claimed, were similarly benefited and are substantially of a similar character, and upon which the former assessments had not been paid. Caroline B. McDougald held 467.57 acres, and was assessed on account of the unpaid assessment of 1907 for $4,732.10, and for the 1912 assessment, the sum of $4,438.30, making a total of $9,170.40, or an average of $19.61 per acre. In like manner, the lands of Mary B. Percival, consisting of 113 acres, were assessed for $1,139.50 and $1,073.50, respectively, making a total of $2,213.00, or an average of $19.58 per acre. The appellants, as already stated, had paid, in three installments, $3,459.18, and are now assessed for $2,764, or a total of $6,223.18. To this, the appellants add the sum of $940.90, which represents interest at seven per cent per annum, computed from the dates of the respective payments up to June 18, 1912—the date of filing the present assessment list, and thus reach the grand total of $7,164.08, or an average per acre of $23.56 on their 304 acres. This, it is claimed, shows an average difference per acre of about $3.96, or a total difference of $1,203.84. "In other words," say the appellants, "Mrs. McDougald by not paying the Bonbini $5,093.87 assessment and Mrs. Percival by not paying the Bonbini $1,268.36 assessment, saved 7% interest for substantially 4¾ years (about 33⅓%), besides actual reductions in

this assessment of respectively $361.57 and $128.96." By "actual reductions" is meant the alleged difference between the sum assessed upon said lands in 1907, which was based on the estimated costs and benefits, and that assessed in 1912 in lieu thereof in accordance with "the benefits derived."

We have thus elaborately stated the position of appellants so that our conclusions may be better understood. There is no support for the statement that the reassessment and the present assessment on the delinquent lands "is practically one." The amended section does not contemplate that the two assessments shall be treated as a single assessment, and we know of no rule of law which so requires. The assessment list separates the reassessment from the assessment levied for the future work and the existing indebtedness, as we have already shown. It has also been made clear that we cannot consider on this appeal whether the appellants are entitled to credit for the amount paid on the assessment declared invalid and the interest thereon. It follows, then, that neither the principal nor the interest should be taken into account in determining the validity of the present assessment on the lands of the appellants. For such lands are herein assessed only for their proportion of the existing indebtedness and the cost of the proposed reclamation work. But even if it be conceded that the legal effect of the amendment to section 3466½ was to merge the reassessment and the new assessment in the case of delinquent owners, this would not prejudice the rights of appellants so far as the present assessment on their lands is concerned, for the reason that they are in no way charged on account of the reclamation work of 1907. It is a well-settled rule that "a party who is not prejudiced in any way by an irregularity in levying an assessment, cannot complain thereof, even if other property owners who are prejudiced have a right to complain." (Page & Jones on Taxation by Assessment, sec. 1330; Cooley on Taxation, 3d ed., p. 1427.) It follows, therefore, that the assessment upon the lands of appellants must be declared valid.

4. It is further contended that the present assessment for the proposed work was relatively disproportionate to the benefits to be derived therefrom, as compared with assessments upon other lands. There was a conflict of evidence upon this point and the court found against the appellants.

Hence, the finding will not ·be disturbed. (See *Meyer* v. *Reclamation District No. 17, ante,* p. 104, [155 Pac. 635].)

5. Further exception is taken to the ruling of the trial court upon a motion made by the plaintiffs to strike out portions of the defendant's answer. To the allegations of the complaint that the lands of the plaintiffs were not charged in the present assessment "with their just proportion of the former assessment," nor the "proper proportion of the costs of said reclamation," the defendant interposed a denial based upon information and belief. Plaintiffs moved to strike out that part of .the answer on the ground that the information was presumptively within the knowledge of the officials of the reclamation district. But the motion was denied. Without deciding whether the officials were charged with such knowledge, it seems to us that the allegations of the complaint involved legal conclusions which had no proper place in the pleadings. (*Guy* v. *Washburn,* 23 Cal. 111; 21 Cyc. 63.) Furthermore, it is apparent from the record before us that the plaintiffs could not have suffered any substantial injury even if it is conceded that the answer was insufficient. Nor were they misled by the form of the denial, for they treated it upon the trial as a disputed question of fact. (*Warring* v. *Couch,* 165 Cal. 383, [132 Pac. 587].)

We have considered the objections made by appellants to the rulings of the court on questions of evidence and find that they have no substantial merit. The demurrer to the answer was properly overruled. No further points require discussion.

The judgment and order appealed from are affirmed.

SHAW, J., Concurring.—I agree that the judgment be affirmed.

In 1912, when the assessment here attacked was made, the amendment of 1911 of section 3466½ of the Political Code was in force. So far as material to this case it then read as follows:

"In all cases in which an assessment shall have been levied . . . for reclamation purposes upon the lands embraced within any reclamation district, and if the assessment upon any tract or tracts of land shall have thereafter been ad-. judged invalid by any court of competent jurisdiction . . . then such tract or tracts of land shall be charged in any sub-

sequent assessment with such proportion of the former assessment, as the benefits derived by said land from the reclamation works for which said former assessment was levied bears to the whole amount of said former assessment; or a subsequent reassessment of such tract or tracts of land may be made separately for the purpose of charging said land with its proper proportion of the costs of reclamation.''

A former assessment, referred to as the Bonbini assessment, had been adjudged invalid by this court. The appellants and others had paid the charge on their lands by that assessment. McDougald and other land owners had not paid it upon their lands. The part of the assessment of 1912, covering the charge against McDougald and others on account of their failure to pay the Bonbini assessment, was made under the authority of the section above quoted. It will be seen from its language that it requires such delinquent lands to be charged in the subsequent assessment ''with such proportion of the former assessment, as the benefits derived by said land from the reclamation works for which said former assessment was levied bears to the whole amount of said former assessment,'' or, as stated in the clause immediately following, ''with its proper proportion of the costs of reclamation.''

These two clauses refer to the same thing, and were evidently intended to have the same meaning. In order to give the first clause a just operation and lawful effect and harmonize it with the second clause, it is necessary to qualify slightly the literal meaning of the phrase, ''benefits derived by said land from the reclamation works for which said former assessment was levied.'' If these are the entire actual benefits to such land from the works, it might happen that an unfair assessment would be the result, for the actual benefit might far exceed its just share of the expense. For illustration, works costing five thousand dollars, or five dollars for each acre, might conceivably benefit the one thousand acres reclaimed thereby to the amount of twenty thousand dollars, or twenty dollars per acre. If one hundred acres which had not paid the five hundred dollars at five dollars per acre were afterward charged with the proportion which the actual benefit thereto, two thousand dollars, bore to the entire cost, five thousand dollars, it would be charged two-fifths of the entire cost, or two thousand dollars, which would be four times as much as the other lands had paid. The answer to

this puzzle is found in the fact that, in contemplation of law in making such assessments, the actual total benefits to the property assessed are never estimated, except for the purpose of determining that such benefits will equal or exceed the cost. That being ascertained, the "benefits" are then taken as the equivalent of the total cost, and the benefits to each parcel as the equivalent of its just share of the total cost. Thus limited, in the illustration given, the total benefits would be five thousand dollars, and the benefits to the tract of one hundred acres, assuming all the lands to be benefited alike, would be five hundred dollars. The proportion of this sum to the total of the former assessment would be one-tenth, or five hundred dollars, obviously its "proper proportion of the cost of reclamation" as provided by the second clause.

This statute was the sole authority for the portion of the present assessment constituting the separate charge for the delinquency upon the Bonbini assessment. That charge, of course, must conform to the statutory standard. That standard does not provide for or allow the commissioners to take into the account any interest upon the payments by other land owners upon the Bonbini assessment. That interest is a matter wholly foreign to the assessment of 1912, and, therefore, it follows that the failure to consider such interest in making up the sum charged to lands delinquent upon the Bonbini assessment does not affect the present assessment nor render it invalid. In my opinion this effectually disposes of the objections relating to the interest allowed as a credit by section 3466½, as it stood at the time of the Bonbini assessment. If the parties who paid that assessment have any remedy for the interest afterward accruing thereon, it must be sought by some other mode than by including it in a reassessment upon the delinquent lands under the section as amended in 1911.

In my opinion, none of the other objections to the assessment is tenable, but I cannot say that I agree with all of the reasoning upon which Mr. Justice Lawlor founds his conclusions thereon.

Sloss, J., concurred.

Hearing in Bank denied.