[Sac. No. 2100.   Department Two.—October 6, 1914.]

RECLAMATION DISTRICT No. 673, of Sacramento County, by A. F. Williams et al., Respondent, v. M. H. DIEPENBROCK et al., Appellants.

Reclamation District—Action to Foreclose Lien—Amendment of Complaint to Correct Name of Plaintiff.—In an action to foreclose a lien for an assessment for reclamation purposes it is proper to permit an amendment of the complaint to correct a mistake in the corporate name of the plaintiff by changing it from "Swamp Land Reclamation District No. 673" to "Reclamation District No. 673."

Id.—Assessment List—Correction at Trial.—Under section 3460 of the Political Code it is proper, on the trial of such action, to permit a correction by the commissioners of the description of the land designated in the assessment list as the property of the defendant, in order to add to the clearness of the description. The time for amendment is not restricted to the period during which the lists remain in the actual possession of the county treasurer.

Id.—Effect of Amendment—Whether Precludes Recovery in Action.—Such an amendment does not create a new assessment or a new lien which precludes recovery in the original action; it simply makes the list conform to existing facts.

Id.—Property Occupied in Part by Owner and in Part by Lessee—Whether Separate Assessments Necessary.—The fact that part of a tract of land is held by the owner and part by other persons under lease, does not make the holding two separate parcels for the purposes of drainage assessments.

Id.—Report of Trustees of Reclamation District—Statement as to Work Done.—A report of the trustees of a reclamation district, listing the outstanding warrants and stating the purpose for which they were issued, and estimating the indebtedness not covered by warrants and stating the purpose for which it was incurred, is sufficient. The provision of section 3459 of the Political Code that the report of the board of trustees shall contain a statement of the "work done or to be done, and its estimated cost," means the work done and unpaid for, and does not require a detailed statement of all work performed under the expended assessment.

CLXVIII Cal.—37

Id.—Statement as to New Work—Widening and Strengthening Levee.—It is a sufficient report by such trustees of new work in widening and strengthening a cross levee, within the requirements of section 3455 of the Political Code, to state: "That a break has occurred from the high water of the winter of 1907 and 1908, in the cross levee of said district, and portions thereof have been washed away, and it has been estimated by a competent engineer, and the said board of trustees estimated and determined, that it will be necessary to widen and strengthen said cross levee, and to raise it to a uniform height, and that it will require the excavation and removal of four thousand cubic yards of sand and earth to make such repairs and improvements to said cross levee, and that it will cost twenty-five cents per cubic yard, making a total of one thousand dollars to do said work and make said repairs and improvements to said cross levee, and the said board of trustees did also approve and adopt said plan of repairing and improving said cross levee and the estimated cost thereof."

Id.—Repair of Boiler—Statement in Report of Trustees.—The specification in such report that the boiler then in use for making steam to run the pump is not only old and worn out, but inadequate to carry the amount of steam necessary for operating the engine used for driving the pump, and that it will be necessary to replace the old boiler with a new one, and that the estimated cost of such new boiler will be four thousand two hundred and fifty-three dollars, is a statement in reference to the repair of old work, rather than of a plan for new work.

Id.—Assessment in Proportion to Benefits—Presumption as to Fairness.—The inclusion of the balance of all the money which was to be raised to pay the outstanding indebtedness of the district under the head of "incidentals," and the assessment of it against each acre of land in the district equally, is not essentially unfair, and the burden is on a landowner to show that the assessment is not in proportion to the benefits.

Id.—Description of Land in Assessment—Reference to Adjoining Owners—Liberal Interpretation.—A description of the tract to be assessed for reclamation purposes by reference to lands of adjoining owners is sufficient. Courts approve a very liberal construction in dealing with descriptions of land.

APPEAL from a judgment of the Superior Court of Sacramento County. C. N. Post, Judge.

The facts are stated in the opinion of the court.

R. Platnauer, for Appellants.

C. A. Elliott, for Respondent.

MELVIN, J.—This is an action to foreclose a lien for an assessment for reclamation purposes ' on defendants' land. Judgment was in favor of the plaintiff and from said judgment defendants appeal.

The plaintiff in the complaint as originally filed was designated as "Swamp Land Reclamation District No. 673." It developed at the trial that the true name of the corporation was "Reclamation District No. 673," and on motion the court permitted the striking out of the first two words of the title of plaintiff as pleaded. This is assigned as error by appellants. In the answer defendants attacked the corporate existence of "Swamp Land Reclamation District No. 673," and the argument is that by plaintiff's admission that there was no such corporation as the one named, there was no plaintiff originally, and therefore nothing to amend. This theory would give the plaintiff power to make admissions but nothing else. It is true that where one party has brought suit, the court may not arbitrarily permit the substitution of another party who possessed no interest in the original cause of action and had acquired none by assignment. That is the rule expressed in *Dubbers* v. *Goux,* 51 Cal. 154, but the case at bar does not properly fall under the rule. In *Merced Bank* v. *Price,* 9 Cal. App. 189, [98 Pac. 383], emphasis is laid upon the fact that the substitution of Mrs. Dubbers for her husband in *Dubbers* v. *Goux* permitted her not to prosecute the same action as the one which he had begun, but *"another and distinct cause of action in her separate right."* That case is therefore not authority for the one before us because in the first place there was in this case really no substitution of parties, but a mere correction of a misnomer, and in the second place the cause of action remained exactly the same. The correction made was fully justified under section 473 of the Code of Civil Procedure. In *Nisbet* v. *Clio Mining Co.,* 2 Cal. App. 441, [83 Pac. 1077], the authorities are discussed and the rule approved which sanctions an amendment to correct a mistake in pleading the corporate name of a party to an action. With the conclusions reached by the district court of appeal in that case we fully agree and we find no error in the action of the court in the case before us, permitting the amendment.

The land described in the assessment list as the property of the defendant was designated by naming the owners of the

surrounding lands. There were certain omissions to name tracts the mention of which would add to the clearness of the description. What was done by the court when this fact became apparent is best demonstrated by a quotation from the findings:

"That on the 28th day of June, 1911, when said case was on trial it was disclosed by the evidence that a mistake had been made by said commissioners in describing the said tract of land of said defendant Diepenbrock, in said assessment list. That thereupon said commissioners, who were all three present in court, corrected the description of said Diepenbrock's lands in said assessment list by adding to said description the particulars omitted therefrom, thereby making said description of said Diepenbrock's land read as it appears in said amended complaint.

"That the description of said Diepenbrock's land in said assessment list, before correction was sufficient to identify the tract of land sought to be assessed, and the errors in said description were not of a character to mislead defendant as regards said assessment, or the land sought to be impressed with the lien thereof."

Appellants insist that the commissioners had lost power to make the correction because the list had been returned by the county treasurer to the trustees of the district. Respondent's counsel call attention, however, to section 3460 of the Political Code which is as follows:

"The commissioners appointed by the board of supervisors must make a list of the charges assessed against each tract of land; and if there be any error or mistake in the description of the land, or in the name of the owner, or if any land which should be assessed has been or shall be omitted from the list, or if there is any error or mistake in any other respect, the commissioners shall amend or correct the same at any time, either before or after the lists shall have been filed with the treasurer of the county."

Appellants interpret the language of the above-quoted section as meaning that the power to amend lasts only during the time that the treasurer retains the list. The language of the section is very broad and we cannot say that the legislative intent was to express the limitation for which appellants contend. The words "either before or after the lists shall have been filed with the treasurer of the county" are, taken by

themselves, subject to no such limited interpretation. If the time for amendment were to be restricted to the period during which the lists should remain in the actual possession of the treasurer, it would have been easy to frame the statute in such way that the desired limitation should be expressed. Instead, the very broad language of the quoted section was used by the legislature. We are of the opinion that the commissioners were acting within the authority vested in them by section 3460 of the Political Code.

It is next contended that no recovery can be based upon the amended assessment because, as counsel phrases it "the amended assessment list relied upon as creating a lien upon the land of the defendant first came into existence during the trial of the action." But the correction did not create the lien. It merely made the list conform to existing facts. The commissioners had performed their duties of viewing and assessing the land, but certain errors in the description had been made. It was thoroughly within the discretion of the court to permit such correction as would make the list conform to the facts, but no new assessment was thereby made—no new lien was created. It has been held by this court that where, by inadvertence, property has been placed by description in the wrong range, a new cause of action is not set up when the complaint is amended to conform to verity. (*Heilbron* v. *Heinlen,* 72 Cal. 377, [14 Pac. 24].) And, as is well said by counsel for respondent "The power which section 473 gives to the court concerning the correction of pleadings is analogous to that given to the commissioners by section 3460, and their correction of the list did not substitute a new cause of action for the old."

As part of the property of Mr. Diepenbrock was occupied by himself and farmed under his direction and part was held by other persons under lease, it is contended that this made the holding two separate tracts for the purposes of assessment. But the uses to which land is devoted do not necessarily divide it into tracts. This was one body of land and was properly assessable as such.

The next assignment of error is that the report of the board of trustees fails to contain a statement of the work already done, and that the assessment is therefore void. In this behalf section 3459 of the Political Code and *Swamp Land Dis-*

*trict* v. *Silver*, 98 Cal. 51, [32 Pac. 866], are cited. Paragraph six of the report contains this language:

"That the following is a statement of work done and which is unpaid for, and for which warrants of said district have been issued and are outstanding, and are due and unpaid."

This is followed by a list of the warrants and the purposes for which they were issued. Then follow statements that the board estimated the amount of outstanding debts against the district for which no warrants had been issued as eight hundred and fifty dollars; and that said indebtedness "accrued for fuel oil, lubricating oil, services of engineer to operate the pump, and incidentals pertaining to operating said pump." Section 3459 of the Political Code requires a statement in the report of the "work done or to be done and its estimated cost." Respondents are correct in the interpretation of this language as meaning "the work done and unpaid for," and as not requiring a detailed statement of all work performed under the expended assessment. Such data would be of no use to the commissioners in assessing the "estimated cost" upon the land of the work "done or to be done." Paragraphs four and five of the report state the general character of the work performed under the former assessment and that the work already done and not paid for is evidenced by outstanding warrants (except an indebtedness of $850.00). In paragraph six the purposes for which warrants were issued and the rest of the debt incurred are sufficiently set forth. There is nothing in *Swamp Land District* v. *Silver*, 98 Cal. 51, [32 Pac. 866], supporting the assertion that the statute was not complied with substantially.

The appellants assert that the proceedings of the board of trustees were of no effect because there was a failure to report to the supervisors any plan for new work of widening and strengthening the cross levee, as required by the provisions of section 3455 of the Political Code. The portion of the report which is attacked is as follows:

"That a break has occurred from the high water of the winter of 1907 and 1908, in the cross levee of said district, and portions thereof have been washed away, and it has been estimated by a competent engineer and the said board of trustees, estimated and determined that it will be necessary to widen and strengthen said cross levee, and to raise it to a uniform height, and that it will require the excavation and

removal of four thousand cubic yards of sand and earth to make such repairs and improvements to said cross levee, and that it will cost twenty-five cents per cubic yard, making a total of one thousand dollars to do said work and make said repairs and improvements to said cross levee, and the said board of trustees did also approve and adopt said plan of repairing and improving said cross levee and the estimated cost thereof.''

It is insisted that this is very far from being a report of any *plan* for the new work of widening and strengthening the cross levee, and *Reclamation District* v. *Bonbini,* 158 Cal. 202, [110 Pac. 579], is cited as supporting this position. But the facts of the two cases were entirely different. In the Bonbini case it is held that the report must contain a statement of the new work to be done ''as clear and definite as in the case of original plans.'' The opinion then proceeds as follows: ''We may assume that the statement of the first item of proposed new work, viz., the extension of the head levee for about three-fourths miles and the raising of the present head levee on an average of two feet is sufficient, though probably not as clear and definite as it might be made. But we do not see how this can be held as to the item of raising the levees along the San Joaquin River and French Camp slough, which, including also the 'repair' of said levees, amounts to the large sum of thirty-three thousand dollars, without any designation of the amount proposed to be used for raising the levees. There was absolutely nothing in the statement from which any one could draw an inference as to the extent to which the trustees were to raise these levees, if indeed they had come to any conclusion upon that point themselves, which does not appear. It does appear that the landowners by resolution adopted May 4, 1907, had authorized and directed the trustees to formulate a plan for the reclamation and protection of the lands, including their drainage and to employ necessary engineers and chain-men to furnish the proper plan and estimate of cost, but nothing appears to have been done by the trustees under this resolution other than the presentation of the statement under discussion. So far as the particular point we are discussing is concerned, we have the mere statement of the trustees that they proposed 'to . . . raise the levees,' and that the estimated cost thereof is some undesignated portion of thirty-three thousand dollars.

This, in our judgment, is utterly insufficient to give to the landowners the notice which the law contemplates they should have, and insufficient to serve as a basis for the assessment in so far as such proposed work is concerned." It will appear at a glance that the criticised part of the report in the case at bar is more nearly analogous to the first item mentioned in the above quotation, which was declared to be sufficient, than to the second, which was held to be fundamentally defective. Assuming, but not deciding, that the work described is, strictly speaking, *new* work and not repair or replacement of old work damaged by floods, the report is not vulnerable to the attack based upon the ruling in the Bonbini case. The faulty specification of that case lacked two material elements of the one attacked here, namely: 1. The amount of earth required to make the improvements which had been found necessary; and, 2. The cost per yard of such earth. It is true that the amount necessary to repair the breaks and that required to widen and strengthen the levee and that to be devoted to raising it to a uniform height were not segregated, but there was sufficient statement of the bulk of material and cost per yard to enable the landowners to ascertain the specific purposes of the assessment, the real utility of the contemplated improvements, and the probable protection which the district was to receive from the work. The failure of segregation in the report before us of the exact amount of earth which was to be applied to each part of the general improvement of the cross levee was not so important as the lack of separation of the two elements of specification "a" in the Bonbini case, i. e.: 1. The extension of the head levee for "about" three-fourths of a mile; and, 2. The raising of said levee "on an average" of two feet; yet that specification was held to be sufficient and so must this be.

The eighteenth paragraph of the report specified that the boiler then in use for making steam to run the pump was not only old and worn out, but inadequate to carry the amount of steam necessary for operating the engine used for driving the pump; that it would be necessary to replace the old boiler with a new one; and that the estimated cost of such new boiler would be $4523.00. Appellant complains that the report fails to adopt a new plan for this contemplated improvement or to specify the capacity of the new boiler which is left to future determination by the trustees. But the

replacing of a new boiler by an old one amounts to no more than the repair of old work. There is no change of plan involved but the substitution of a new and efficient piece of machinery for one that had become worn out and inadequate. The important information for the landowner was the cost of the new boiler and that was given.

It is asserted that the assessment was not made in proportion to the benefits which would result to each tract from the work of reclamation, because the board included the balance of all of the money which was to be raised to pay the outstanding indebtedness of the district under the head of "incidentals" and assessed it against each acre of land in the district equally. Appellants invoke section 3456 of the Political Code as forbidding such method. Unless there was something essentially unfair about this plan of apportioning the debt for "incidentals" we must uphold the judgment of the lower court based upon its finding that the amounts charged against the various tracts of land in the district were proportionate to the respective benefits conferred by the improvements; because while undoubtedly the landowner may, in a case of this sort, question the fairness of the plan adopted by the commissioners (*Reclamation District No. 531* v. *Phillips,* 108 Cal. 309, [39 Pac. 630, 41 Pac. 335]; *Reclamation District No. 537* v. *Burger,* 122 Cal. 444, [55 Pac. 156]; *Reclamation District No. 108* v. *West,* 129 Cal. 624, [62 Pac. 272]) the burden of proof is upon him to overcome the presumption in favor of the validity of the assessment. (*Reclamation District No. 70* v. *Sherman,* 11 Cal. App. 419, [105 Pac. 277].) And appellant made no showing independent of the testimony and documentary evidence offered by the plaintiff. The testimony of Commissioner Kercheval was to the effect that as there was nothing to show what the outstanding indebtedness was for, it was classed as a debt for "incidentals" and assessed equally upon all of the land of the district. We cannot see anything essentially unfair in such a plan and therefore cannot disturb the finding of the trial court.

We have carefully considered the contention that the original description of appellant's property to be assessed was not sufficient. The court found to the contrary. The method pursued, as we have indicated, was a description of the tract to be assessed by reference to lands of adjoining owners.

This was a recognized form of description. (*Reclamation District* v. *Wilcox,* 75 Cal. 450, [17 Pac. 24].) The south boundary in the original and in the corrected assessment was described in the same way. The north boundary as set forth in the original description contained the designation of one more adjacent tract than the amended call and the east boundary one less, while three tracts were added to the description to make the western boundary complete. It thus appears that each exterior line was at least partially designated in the original description and all of the southern boundary was therein correctly set forth. It is unnecessary to cite the many decisions of this court which approve a very liberal construction in dealing with descriptions of land. One of the best considered and most frequently cited of these is *Best* v. *Wohlford,* 144 Cal. 736, [78 Pac. 294], in which it is held that the designation of the land in a deed will be sufficient "if it afford the owner the means of identification, and do not positively mislead him or is not calculated to mislead him." (Quoting from Cooley on Taxation, p. 745.) In *Irrigation District* v. *De Lappe,* 79 Cal. 355, [21 Pac. 825], the court by intendment extended a call of five hundred and forty feet to five thousand four hundred feet, and one of two hundred feet to two thousand feet. Liberal construction has been extended even to tax deeds, although tax proceedings are *in invitum,* and in *Bosworth* v. *Danzien,* 25 Cal. 300, the court said: "The test, then, to which every false call occurring in the course of tax proceedings is to be subjected, is this: Has it probably had the effect to mislead the landowner in relation to the land assessed, advertised and sold?" Much more liberally should the court view an attempted description like that contained in the original assessment, in view of the power of correction vested in the commissioners by section 3460 of the Political Code. The court properly found that the original description was sufficient to apprise the owner of the land sought to be assessed.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.