[Sac. No. 5114. In Bank.—August 24, 1937.]

MARY E. MORRIS, Respondent, v. MARION POUND-STONE et al., Appellants.

Thomas Rutledge, A. C. Huston and Horace B. Wulff for Appellants.

Clark, Nichols & Eltse for Respondent.

SEAWELL, J.—Defendants appeal from a judgment of the Superior Court of Colusa County annulling a reapportionment by the board of supervisors of that county of assessment number 5 of Reclamation District No. 108, in so far as that assessment, as originally levied, affected tract number 109. Tract 109 contains 3,120 acres. In 1923 it was duly and properly assessed for assessment number 5 for $197,538.63. In 1925 bonds in the sum of over $3,000,000 were issued upon assessment number 5. Plaintiff is the holder and owner of some of these bonds, so secured.

The facts giving rise to the present controversy are as follows:

In June of 1931, the county treasurer of Colusa County, as trustee of the bond fund of Reclamation District 108, acquired the title to tract 109, containing 3,120 acres, for the nonpayment by the owner of the call of April 1, 1930, of assessment number 5. In 1936 the county treasurer purported to purchase the title of the state to three small parcels of land designated as tracts A, B and C, all included within the exterior boundaries of tract number 109. The total acreage of these three tracts was about 280 acres. These three tracts were located approximately in the middle of tract 109. Thereafter, on April 18, 1936, the county treasurer, purporting to act under the provisions of section 3466 (a) of

the Political Code, offered for sale at public auction, the tax title of the state and the tax title of the district, to tracts A, B and C. Prior to this sale the board of trustees of the district, purporting to act under section 3466 (a) of the Political Code, purported to fix and determine the full market value of parcels A, B and C as an entirety at the sum of $10,399.42. At the sale so held, defendants Marion Poundstone, George Poundstone and Rose P. Keller purchased the three parcels as a unit at the price fixed by the board of trustees, no other bids being made. Thereafter the county treasurer issued to the purchasers two deeds, one purporting to convey the state title held by her, and the other purporting to convey the title held by her as trustee, acquired through the delinquent sale for assessment number 5. Under section 3466 (a) of the Political Code, these deeds were subject to the uncalled balance of assessment number 5. Thereafter the three purchasers petitioned the board of trustees, under section 3460 of the Political Code, to reapportion the uncalled portion of assessment 5 on tracts A, B and C. The board of trustees reapportioned the uncalled portion of the assessment, and prepared a list of the portion assessed against tracts A, B and C. This list was filed with the board of supervisors, as required by section 3462 of the Political Code. After notice of hearing of objections had been given, as required by that section, plaintiff appeared and objected, stating as one ground of objection that the board had no jurisdiction to proceed. The board of supervisors overruled the protest of plaintiff and approved the reapportionment. Plaintiff, within the 30 days required by section 3462 of the Political Code, commenced the present action to annul the reapportionment in the manner provided in that section.

As already indicated, the trial court annulled the reapportionment. The exact theory of the trial court cannot be ascertained, findings having been waived, but apparently the trial court was of the opinion that, after the treasurer, as trustee, has purchased a tract of land for a delinquent assessment, neither section 3466 (a) nor any other section of the Political Code permits the treasurer to resell that land in smaller tracts in the manner disclosed by the record herein. The correctness of the trial court's determination depends primarily upon the proper interpretation of section 3466 (a) of the Political Code, that section having been added to the

code in 1931. The problem can be stated as follows: Admitting, without deciding, that section 3466 (a), having been added to the code of 1931, can be validly applied to a sale held in 1936, although the bonds were issued in 1925, does that section, properly interpreted, permit the treasurer, after he has purchased as trustee an assessment tract for delinquent assessments, to resell a part of that assessment tract before any reapportionment of the balance of the assessment has been had, or is the treasurer required to resell the assessment tract so purchased as a unit? We are of the opinion that section 3466 (a) does not permit the resale of part of an assessment tract in the manner adopted by the defendant county treasurer in the present case.

At the time the bonds held by plaintiff were issued (1925), section 3480 of the Political Code governed the powers of the county treasurer in reference to the resale of lands purchased for delinquent assessments. As the section then read (Stats. 1923, p. 598), it is conceded by all the parties to this appeal that the county treasurer was required to resell any assessment tract purchased for delinquent assessments as a unit. This concession is clearly sustained by the provisions of the section as it then read. The section provided that after the treasurer had purchased the land at a sale for delinquent assessments, which he was required to do if no purchaser appeared, and after the one year period of redemption had elapsed, he might resell in the following manner and on the following conditions: "*Any parcel* of land bid in and purchased by the treasurer as aforesaid, as trustee of the bond fund of the district, may be sold and conveyed by him . . . at any time after the expiration of said redemption period of one year, at public or private sale and with or without notice to any person paying him the amount for which *said parcel* was bid in by said treasurer at delinquent sale, with interest thereon at the rate of seven per cent per annum compounded yearly, from the date of said delinquent sale, and also the amount of all subsequent instalments then delinquent, with accrued interest and penalties thereon . . . the treasurer shall execute a deed to such purchaser upon such sale, conveying said property free of encumbrance except state, county and municipal taxes, and the unpaid balance of said assessment . . . " It is quite clear that under this section the authority of the treasurer to sell was limited to

the *parcel* purchased by him at delinquent sale, and he was required to secure a price equal to the full amount that he had paid for the property, plus interest and penalties. Obviously, there was no authority and no means provided for the sale of part of a tract.

Section 3480 of the Political Code fixed a definite price, as above indicated, at which the property had to be sold. With the recession of real estate values caused by the late depression, it frequently happened that the price fixed by section 3480 exceeded the fair market value of the property, with the result that county treasurers were unable to sell lands purchased by them for delinquent assessments of reclamation districts. With this in mind, the legislature amended section 3480 in 1931 to provide in part that "after the lapse of one year from and after the expiration of the period of redemption *such parcel* may be sold as in section 3466 (a) of this code provided". Note that the amendment refers to the sale of "the parcel" of land already purchased at delinquent assessment sale by the treasurer. As part of the same reform section 3466 (a) was added to the Political Code. It provides in part: "After the lapse of one year from and after the expiration of the period of redemption of *any land* sold in the district, . . . either pursuant to the provisions of sections 3466, 3480 or section 3480a of this code, the county treasurer of the main county . . . may in their discretion then sell *any land remaining unsold* to the highest bidder for cash." The section then provides for the place of sale and the giving of notice thereof, and in connection with the notice provides: "It shall be sufficient to describe said land in said notice by reference number as set forth in the assessment lists." As to the price at which the land is to be sold, it is provided that: "The trustees of the district shall have the right to reject any and all bids and no bid shall be accepted for an amount less than such price as shall be approved by them. No parcel shall be sold for an amount less than the fair market value thereof, as such value shall be ascertained by the board of trustees . . . Upon such last mentioned sale being made as herein provided, the said county treasurer shall execute a deed to the purchaser conveying the land sold, upon payment of the price bid, which deed shall have the effect of conveying title to the land sold to the purchaser free of encumbrance, except district assessments (including the unpaid balance of said assessment for the delinquency of which

said property was sold) which upon the date of the sale herein provided had not been called.''

Appellants contend that this section completely changed the method of sale by county treasurers of reclamation land purchased at delinquent tax sale; that, although section 3480 of the Political Code prohibited such resale except of the entire parcel purchased at the delinquent sale, under section 3466 (a) of the Political Code, the treasurer was authorized to sell in parcels smaller than the parcels so purchased. This contention is predicated almost entirely on the words italicized in the above quotation, authorizing the treasurer to *"sell any land remaining unsold"*. It is contended that these words authorize the treasurer or board of trustees to break up a tract purchased for delinquent assessments and to sell portions or a portion of it without selling the entire tract. Appellants point out the difference in phraseology between sections 3480 and 3466 (a). Whatever merit there might be in appellants' interpretation of these words standing alone (and we think there is none) is completely dissipated when the section is read as a whole.

It is obvious from a reading of section 3466 (a) that the main purpose of the legislature in passing the section was to permit reclamation districts holding lands purchased as a result of delinquent assessment sales, to resell the same for the fair market value, in place of the requirement in section 3480 that such lands had to be resold for the amount of the delinquency, plus interest and penalties. The validity of this change in the selling price was upheld in *Rivers Farm Co.* v. *Gibson,* 4 Cal. App. (2d) 731 [42 Pac. (2d) 95], it being held in that case that such a change did not unlawfully impair the contract rights of the bondholders. The same case also held that another 1931 statute giving the former owner of the land a preferential price at which he could purchase was unconstitutional, because it unlawfully impaired the contract rights of the bondholders. There is nothing in the new section to indicate that the legislature had in mind authorizing the breaking up of assessment tracts so purchased, and reselling them piecemeal, in fact, the section clearly indicates that no such change was contemplated. It will be noted that section 3466 (a) of the Political Code, after providing for the notice of sale provides, ''It shall be sufficient to describe said land in said notice by reference

number as set forth in the assessment lists.'' In the present case the tract purchased at delinquent assessment sale was listed as tract 109, containing 3,120 acres. The notice of sale given as required by section 3566 (a) did not, nor could it, refer to tract 109, but it referred to parcels A, B and C, giving a metes and bounds description, these three tracts including about 280 acres.

Clearly the legislature, by permitting reference to the tract number, contemplated that the tract would be sold as a unit; otherwise, the permission granted is meaningless.

■ There is another and more important reason why the procedure adopted by the board of trustees in the instant case cannot be sanctioned. Section 3466 (a) provides, as did section 3480, that the purchaser at such sale takes the land subject to the ''unpaid balance of said assessment for the delinquency of which said property was sold, which upon the date of the sale herein provided had not been called''. The section also requires a sale at the fair market value to the highest bidder: Now, let us see what the board of trustees did and could do under appellants' construction of the section. Tract 109 included 3,120 acres and was assessed for over $197,000. Various calls were made on this assessment. The entire tract was purchased by the county treasurer, as trustee, for failure to pay a delinquent assessment. The board of trustees then determined to sell three small parcels out of the heart of that tract, totaling about 280 acres. The evidence shows that there 280 acres constitute some of the best land in the tract. Admittedly the quality and value of the lands within tract 109 are not uniform. Aside from the difficulty of apportioning the amount of delinquency properly chargeable to the 280 acres, there is another difficulty. A prospective purchaser knows that he must take the land subject to a proportional part of the uncalled portion of the $197,000 assessment levied on the entire tract. Nothing is done by the board of trustees to ascertain the amount of such reapportionment prior to the sale. Until the reapportionment is had, it is impossible for a prospective purchaser to know what even the approximate amount of the reapportionment on the parcels offered for sale will be. How can a prospective purchaser intelligently bid at such a sale? Is such a sale an open and fair sale? In the instant case, the children of the former owner of tract 109, the former

owner being the manager of the reclamation district, were the sole bidders. Perhaps they had some advance information as to how the board of trustees intended to reapportion the assessment, but purchasers generally could not possibly have such knowledge. If, as appellants claim the section should be interpreted as permitting such a sale, having been passed after the bonds were issued, in our opinion, the statute would unconstitutionally impair the contract rights of the bondholders. This necessarily follows, because it would be attempting to substitute for the type of sale provided for in section 3480 of the Political Code at the time the bonds were issued, a type of sale where the bidding would be limited to those who either had advance information as to the amount of the reapportionment, or were willing to gamble as to the amount thereof. Such a material cutting down of the rights of the bondholders could not be accomplished lawfully, under the theory and authorities fully discussed in *Rivers Farm Co.* v. *Gibson, supra.* It is true that section 3460 of the Political Code permits a reapportionment of the assessment under some circumstances. We do not need to decide now, the point not being involved, whether the board of trustees and the county treasurer, after a purchase of a tract for a delinquent assessment, but before a resale, such as is provided for by section 3466 (a), could subdivide the tract and secure a reapportionment. Here the reapportionment was not sought until after the sale. For the reasons already stated, such sale must be held to have been invalid, which necessarily determines that the reapportionment, predicated thereon, was likewise void and was properly annulled.

 Appellants likewise contend that respondent bondholder had no right to maintain this action. We do not find it necessary here to discuss the nature of a bondholder's rights, nor the nature of his interest in lands included within a reclamation district and sold to the treasurer as trustee for the bond fund, by reason of delinquent assessments. That problem has been discussed many times by the appellate courts of this state. In *Rivers Farm Co.* v. *Gibson, supra,* the cases are collected and commented upon. Clearly the bondholder is a "person interested" within the meaning of section 3462 of the Political Code, which section confers on a person interested the right to object to any assessment or reapportionment of such assessment.

The remedy pursued by respondent herein is specifically provided for by section 3462 of the Political Code, and respondent followed exactly the procedure therein outlined. The contention that *certiorari* was the sole remedy of respondent to review the action of the board is without merit. As already held, the invalidity of the sale rendered the subsequent reapportionment at the request of the purchasers at that sale totally void. In the present case the validity of the sale was a jurisdictional prerequisite to the reapportionment. Lack of jurisdiction in the board to act at all clearly may be attacked by action. Section 3462 of the Political Code, so providing, is clearly valid.

In view of the construction herein given to section 3466 (a) of the Political Code, the many other points discussed in the briefs need not be passed upon.

The judgment appealed from is affirmed.

Langdon, J., Edmonds, J., Curtis, J., and Nourse, J., *pro tem.*, concurred.

Rehearing denied.