[Sac. No. 5345.   In Bank.—January 17, 1941.]

MARY E. MORRIS, Respondent, v. RECLAMATION DIS-
TRICT No. 108 et al., Appellants.

44

Horace B. Wulff, Rutledge & Rutledge, Thomas R. Rutledge, Arthur C. Huston and Huston, Huston & Huston for Appellants.

Clark, Nichols & Eltse for Respondent.

PETERS, J., *pro tem.*—The defendants appeal from a judgment of the trial court annulling the approval of the Board of Supervisors of Colusa County of a reapportionment by the trustees of Reclamation District No. 108 of a delinquent assessment on a particularly described parcel of land within such district. The main question presented on this appeal can be stated as follows: After a tract of reclamation district land has passed by purchase at a delinquent assessment sale into the ownership of the county treasurer, as trustee for the district, may the tract be subdivided and the assessment on such tract reapportioned, so that the tract may be sold in parcels instead of a unit, against the protest of a bondholder?

Reclamation District No. 108 is located in Yolo and Colusa Counties and embraces about 57,000 acres of land. In 1923 an assessment, known as Assessment No. 5, was properly levied upon the lands within the district. In 1925, pursuant to proceedings had under section 3480 of the Political Code, bonds were issued upon the unpaid portion of this assessment totaling over three million dollars. Plaintiff and respondent herein, Mary E. Morris, is the owner of about $100,000 of these bonds. All semi-annual calls upon Assessment No. 5 were made within their due dates without substantial delinquencies until about 1929 or 1930. At that time many of the landowners within the district were unable to pay such calls, together with other taxes. As a result, over 23,000 acres of the lands within the district became delinquent, and, as a result, this acreage was purchased at delinquent assessment sales by the county treasurer as trustee of the district. (For a full statement of the financial condition of the district see *Morris* v. *Gibson,* 30 Cal. App. (2d) 684 [87 Pac. (2d) 37].) Among the 23,000 acres plus so purchased was Parcel No. 109, containing 3,120 acres, which had been assessed for $197,538.63. This is the parcel involved on this and on a prior appeal. (*Morris* v. *Poundstone,* 9 Cal. (2d) 485 [71 Pac. (2d) 262].)

The trustees of the district, who, under section 3466a of the Political Code, are entrusted with the duty to manage, liquidate and sell the lands bought in at delinquent sale, came to the conclusion that it would be to the best interests of

all concerned if the large parcels so bought in were cut up into smaller parcels. The theory of this was that it was very difficult, if not impossible, to secure purchasers for large tracts, but that purchasers for smaller parcels could be secured.

The first attempt of this district to carry this policy into effect resulted in the litigation involved in *Morris* v. *Poundstone, supra.* Pursuant to the above-mentioned plan, the trustees, purporting to act under section 3466a of the Political Code, in 1935, offered for public sale, in three separate parcels, 280 acres of the 3,120 acres of Parcel No. 109, after first purchasing the title of the state to these parcels. The tax title of both the state and district were offered for sale at that public auction. Prior to the sale the trustees of the district purported to fix the full market value of the three parcels included within the 280 acres at $10,399.42. At the sale these three parcels were purchased as a unit by Marion Poundstone et al. to whom the county treasurer issued two deeds, one purporting to convey the state title, and the other purporting to convey the district title.

After this sale the purchasers, purporting to act under section 3460 of the Political Code, petitioned the trustees of the district to have the balance of the uncalled portion of Assessment No. 5 reapportioned. Mary E. Morris, a bondholder, objected to the reapportionment proceeding. The trial court annulled the reapportionment, and this decision was affirmed by this court. (*Morris* v. *Poundstone, supra.*)

After this decision had become final, the trustees of the district then adopted the procedure leading to the present litigation. Instead of first subdividing, selling, and then reapportioning the assessment, they decided that they would first subdivide, then reapportion, and then sell. Parcel No. 109 was divided into ten parcels of a size which the trustees and the treasurer of the county believed could be readily sold. The board conferred with the state controller, inasmuch as such lands had been sold to the state for delinquent county and state taxes. A subdivision map was filed. The county treasurer then filed a petition with the board of trustees asking them to reapportion the assessment on the subdivided parcel. The trustees thereupon reapportioned the original assessment, with penalty and interest, but not including subsequent calls with interest and penalty. In making the reapportionment

the board applied and used the same factors, the same calculations and information that were used in levying the original assessment against Parcel No. 109. Thereafter, the board of supervisors, over the objections of respondent, approved the reapportionment. Respondent thereupon filed the present action to secure an annulment of the reapportionment. The trial court entered its judgment granting the relief prayed for. It is from this judgment that this appeal is prosecuted.

■ There can be no doubt that respondent bondholder has the legal right to maintain this action. In *Morris* v. *Poundstone, supra,* p. 492, it was held that a bondholder is a "person interested" within the meaning of section 3462 of the Political Code, which confers on a person interested the right to object to any assessment or reapportionment of such assessment.

The Political Code provides in detail for the issuing of bonds by a reclamation district, and for the powers of the trustees after purchase by the district of delinquent lands. The pertinent sections are fully discussed in *River Farms Co.* v. *Gibson,* 4 Cal. App. (2d) 731 [42 Pac. (2d) 95], and *Morris* v. *Poundstone, supra.* So far as pertinent here, section 3480, as it read in 1925, the year the bonds involved herein were issued, and substantially as it still reads except for one amendment hereafter referred to, provided that after the formation of a reclamation district and the levy of an assessment which is wholly or in part unpaid, the district may, and on petition of the owners of one-half of the district lands must, order a special election to submit to the landowners the question of the issuance of bonds in an amount equal to the unpaid assessments. The procedure there outlined was followed in the present case. After bonds are issued, it is provided that the county treasurer shall collect the assessments and place the money in a fund for the repayment of the bonds. It is further provided that the lien of any unpaid assessment continues until all of the original bonds and any refunding bond issues have been paid in full. If any assessment installment becomes delinquent, the county treasurer, after due proceedings, offers the land covered by the assessment for sale to the highest bidder, provided his bid at least equals the aggregate sum due on the delinquent installment, with interest and penalty. If no sufficient bid is made, the treasurer is required to bid in and sell the parcel to himself

as purchaser, as trustee for the district. Any person interested in the property may redeem it within one year after the date of sale by paying to the treasurer a sum equal to price paid for its purchase, with interest to date of redemption. If no redemption is made the treasurer executes to himself as trustee of the district a deed to the property, free and clear of all encumbrances except state, county and municipal taxes, and any portion of any reclamation assessment remaining unpaid at the date of the sale.

As section 3480 read in 1925, after land had thus passed at the expiration of the period of redemption into the ownership of the county treasurer as trustee of the district, it could be sold by him only upon the purchaser paying the amount for which the treasurer had purchased it at the delinquent sale, with 7 per cent interest from date thereof, together with the amount of all subsequent delinquent installments, with accrued interest and penalties thereon. However, it was also provided that the treasurer, after the collection of the final installment, could sell at public auction to the highest bidder for cash.

The above-outlined plan apparently worked reasonably well until the beginning of the depression. Then, as a result of the recession of real estate values, it frequently happened that the price fixed in section 3480 for the purchase of these lands at the expiration of the period of redemption (full amount paid at delinquent sale, 7 per cent interest, plus amount of all subsequent delinquent installments with accrued interest and penalties) exceeded the fair market value of the property, so that the lands could not be sold.

In order to meet this situation, the legislature, in 1931, amended section 3480 to provide further that after the lapse of one year from and after the expiration of the period of redemption, such parcel may be sold as provided in section 3466a of the Political Code. As part of the same reform section 3466a was added to that code. (Stats. of 1931, p. 773.) It provided that after the lapse of one year from and after the period of redemption of any land sold to the district, or county treasurer as trustee of the district, pursuant to sections 3466, 3480 or 3480a of the Political Code, the county treasurer, when and as directed by the board of trustees of the district, may ''sell any land remaining unsold, to the highest bidder for cash. . . . The trustees of the dis-

trict shall have the right to reject any and all bids and no bid shall be accepted for an amount less than such price as shall be approved by them. No parcel shall be sold for an amount less than the fair market value thereof as such value shall be ascertained by the board of trustees. . . . ''. The constitutionality of section 3466a of the Political Code was upheld in *River Farms Co.* v. *Gibson, supra.*

In *Morris* v. *Poundstone, supra,* this court analyzed section 3480 of the Political Code as it read in 1925, and as amended in 1931, and section 3466a, as added to that code in 1931, and held that those sections did not permit *the sale* by the treasurer of a part of a tract without first reapportioning the delinquent assessment. The court in that opinion, after holding that the procedure there adopted was improper, specifically refrained from passing on the question as to whether a tract purchased by the treasurer for a delinquent assessment may be first subdivided and the assessment then reapportioned. In that connection, at page 492, it was stated: ''It is true that section 3460 of the Political Code permits a reapportionment of the assessment under some circumstances. We do not need to decide now, the point not being involved, whether the board of trustees and the county treasurer, after a purchase of a tract for a delinquent assessment, but before a resale, such as is provided for by section 3466a, could subdivide the tract and secure a reapportionment. Here the reapportionment was not sought until after the sale. For the reasons already stated, such sale must be held to have been invalid, which necessarily determines that the reapportionment, predicated thereon, was likewise void and was properly annulled.''

The specific question presented in this case is whether section 3460 of the Political Code, as it read when the bonds were issued, permitted the district to subdivide lands purchased by it for delinquent assessments, and to reapportion the assessment thereon preparatory to selling the tract in smaller units. If the law did not permit such a procedure, the next question presented is whether a 1931 amendment to that section permitted such reapportionment, and, if so, whether such 1931 amendment is constitutional.

A reading of section 3460 of the Political Code, as it read in 1925, when the bonds here involved were issued, indicates that it conferred on the district as owner of the tract, power

to subdivide and reapportion the assessment. After providing that the commissioners appointed by the board of supervisors have power to amend and correct any errors in the assessment list, the section then provided (Stats. 1917, p. 1204): "When *any tract of land* upon which an assessment or assessments shall have been made shall be *subdivided into smaller parcels, the board of trustees of the district shall reapportion the assessment* or assessments upon such tract in such manner as will charge each of said smaller parcels with a just proportion of assessment or assessments previously made upon said tract so subdivided. Said board of trustees shall file with the clerk of the board of supervisors of the county a list or lists of the charges assessed against each of said parcels. Said reapportionment shall be approved by the board of supervisors in the manner provided in section three thousand four hundred sixty-two of this code. Said lists after such approval shall be filed with the county treasurer of the county *and shall have the same effect as on original assessment.*" (Italics added.)

Respondent urges that this section only recognized the right of a landowner to subdivide and secure a reapportionment, and did not recognize the right of the trustee of the district, after purchase for a delinquent assessment, to subdivide and reapportion. It is also urged by respondent that the section as it then read, and now reads, only permitted a reapportionment when the owner had sold or transferred a portion of his tract to a third person, and a *bona fide* partition took place. She urges that the law at no time has recognized the right of any owner to subdivide before he has sold or transferred a portion of the larger tract, or, as she puts it, the law has never permitted a "mere paper subdivision". These contentions seem to us to be unsound. We must give the section a reasonable interpretation. It would be a most peculiar arrangement if the owner of a tract was required to sell a portion thereof before he could secure the reapportionment of the assessment. That would effectively prevent him from ever selling. That was what the trustee, as an owner, attempted to do in the case of *Morris* v. *Poundstone, supra.* That is exactly the procedure that was held in that case to be invalid. In that connection the court stated (p. 491): "A prospective purchaser knows that he must take the land subject to a proportional part of the uncalled portion of the

$197,000 assessment levied on the entire tract. Nothing is done by the board of trustees to ascertain the amount of such reapportionment prior to the sale. Until the reapportionment is had, it is impossible for a prospective purchaser to know what even the approximate amount of the reapportionment on the parcels offered for sale will be. How can a prospective purchaser intelligently bid at such a sale?''

The section, it will be noted, does not limit the right of reapportionment to any particular person or to any particular lands. It states, ''When any tract of land'' is subdivided the board of trustees shall reapportion the assessment. After lands are purchased by the county treasurer for a delinquent assessment the county treasurer becomes the owner as trustee for the bondholders and for the district. One of the obligations of the county treasurer as such trustee is to manage, and, if possible, to sell the lands for the benefit of the bondholders and for the benefit of the district. If the parcel so purchased is so large that it cannot be readily or at all sold as a single unit, section 3460 recognizes that the treasurer should subdivide and reapportion the assessment and sell the land in smaller parcels.

It must be conceded that there is language in section 3480 of the Political Code that is hard to reconcile with this interpretation of section 3460. Section 3480, as pointed out in *Morris* v. *Poundstone, supra,* provides that any ''parcel'' purchased by the county treasurer for a delinquent assessment may be sold by him to any person paying him the amount ''for which said parcel'' was bid in at the delinquent sale. This contemplates that the parcel purchased shall be the same parcel sold. But this language can be reconciled with section 3460 in view of the provision in the latter section to the effect that the reapportionment ''shall have the same effect as on original assessment''. Upon the reapportionment the smaller parcel of land becomes the ''parcel'' referred to in section 3480.

If this construction of section 3460, as it read in 1925, is correct, and we think it is, obviously it became part of the contract of the bondholders. Any other construction would lead to absurd results. Admittedly, a landowner before a sale of his land for a delinquent assessment could subdivide and secure a reapportionment of the assessment. The bondholders took their bonds subject to that condition. When

the land is purchased by the county treasurer as trustee there is even greater need for such power. The duty of the trustee is to sell the lands, if possible. If the parcel is so large that it cannot be sold, it is imperative that it be cut up in smaller parcels that are more readily saleable. From a practical standpoint this is a benefit to the bondholders. Each smaller parcel must be sold for its full and fair market value. A greater price will normally be secured for a large tract if sold in small parcels than if sold as an entirety.

Whatever doubt existed as to whether section 3460, as it read in 1925, permitted the county treasurer to subdivide and reapportion the assessment, that doubt was set at rest by a 1931 amendment to that section. (Stats. of 1931, p. 757.) By that amendment the following sentence was added to the section: ''Assessments and delinquencies thereon on tracts of land which have become delinquent and which have been sold for delinquency pursuant to the provisions of section 3466 or section 3480 of this code, and which have been subdivided, shall be reapportioned in the same manner and with the same effect as if such tract had not been so sold''. We do not think that this amendment added anything to the statute. We think this power existed under the original statute. But even if this section as then amended conferred upon the trustee a power he did not theretofore possess, we do not believe that such change in the law would impair the obligations of the bondholder's contract, as urged by respondent. As already pointed out in *River Farms Co.* v. *Gibson*, 4 Cal. App. (2d) 731 [42 Pac. (2d) 95], the appellate court upheld the constitutionality of section 3466a of the Political Code, added in 1931, which gives the county treasurer the right to sell the delinquent land at its fair market value, even though under section 3480 of that code, as it read at the time the bonds were issued, the treasurer could only sell for the amount of the delinquencies. The case was relied upon in *Morris* v. *Poundstone, supra,* and cited with approval in *Morris* v. *Gibson,* 30 Cal. App. (2d) 684 [87 Pac. (2d) 37]. The reasoning employed in that case is conclusive on this issue. When land is subdivided and a reapportionment had under section 3460, then under section 3466a each of the smaller parcels can only be sold for its fair market value. The security for the bondholders is the land. The security is the same security whether it is one large tract, or ten small tracts.

There is no alteration in the security accomplished by this amendment.

From what has been said, it is clear that under section 3460 the treasurer, as trustee, has the lawful power to subdivide lands purchased by him for delinquent assessments, and to secure a reapportionment thereon.

■■ Respondent contends that even if such power existed, the reapportionment here was properly annulled because the procedure prescribed by law was not followed. It is first urged that the map that was filed in connection with the proceeding leading up to the reapportionment did not comply with the Subdivision Map Act (Stats. of 1937, p. 1863 [Deering's Gen. Laws, 1937, Act 6500]) in many respects. It is pointed out that the map that was filed was not signed by the county treasurer, as owner; that the state was a part owner of the tract; and that the state controller had no power to join in making the subdivision; that the certificate of the state controller dedicating certain roadways was not ac-. knowledged. The complete answer to these contentions is that section 3460 of the Political Code does not require the filing of a map at all, and that the so-called Map Act, *supra,* does not apply to subdivisions of land by a reclamation district, or in fact to subdivisions by any public agency or public officer, where such subdivisions are authorized by law. The definition of subdivider in subdivision (h) of section 2 of the Map Act does not include such persons or agencies. A reading of the other sections of the act demonstrates that it was never intended and could not be practically applied to such public agencies. Moreover, as sections 4 and 29 of the act demonstrate, its provisions are aimed at *sales* of a subdivided tract. In this proceeding no question as to validity of any sale is presented. This case involves simply the validity of the reapportionment on the divided tract. The making and recording of the type of map here involved is permitted under the decision of *Colton L. & W. Co.* v. *Swartz,* 99 Cal. 278 [33 Pac. 878].

■ It is next urged that the reapportionment was void because certain roadways were not included within the reapportionment, and that the bondholders were therefore deprived unlawfully of this portion of their security. The record shows that two roads designated as "Poundstone Road" and "College City Road" were dedicated as public roads and

excluded from the reapportionment. The evidence shows that these are not new roads but are old roads which were in existence at the time of the levy of the original assessment, and had been dedicated as county roads prior to the levy of the assessment. Under the law as it then existed such roads were not assessable. (Section 3456c of the Political Code; *Reclamation Dist., etc.*, v. *East Bay etc. Dist.*, 91 Cal. App. 143 [266 Pac. 969].)

It is also urged that the roadways are not properly described in the reapportionment list. The excepted roadways are permanent and their courses appear on the official maps of the county. The description was sufficient.

The last major contention urged is that the reapportionment was void in that penalties and interest on assessment calls subsequent to April 1, 1930, were not reapportioned. We think that section 3460 requires that they be included. But this defect in the reapportionment proceedings did not warrant the trial court in declaring the entire reapportionment void. The amount of such subsequent installments, together with penalties and interest, is a matter of a mere mathematical calculation from information in the record. The trial court possesses full power to modify the list under such circumstances. (Sections 3456, 3460 of the Political Code; *Reclamation Dist. No. 673* v. *Diepenbrock,* 168 Cal. 577 [143 Pac. 763].) Inasmuch as a reversal of the judgment is called for, this and any other such minor defects may be corrected on the retrial.

The judgment appealed from is reversed.

Shenk, J., Traynor, J., Carter, J., Edmonds, J., Ward, J., *pro tem.*, and Gibson, C. J., concurred.

A petition for a rehearing was denied February 13, 1941.